Leon SIMMONS *v.* STATE of Arkansas

CR 93-88                                              862 S.W.2d 245

Supreme Court of Arkansas
Opinion delivered October 4, 1993
[Rehearing denied November 8, 1993.]

*William M. Howard, Jr.,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Teena L. White,* Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Leon Simmons stands convicted of two counts of possession of cocaine with intent to deliver, and as a habitual offender, was sentenced to two life sentences. He raises five points for reversal.

In his first two points, Simmons argues that the trial judge abused his discretion in refusing to continue the scheduled August 13, 1992 trial and to recuse from trying Simmons's case. Simmons was charged on February 11, 1992, and counsel, Tracy Bagwell, was appointed to represent him. Simmons's present counsel, William Howard, Jr., apparently took over Simmons's representation on June 29, 1992, although no notice of appearance was filed by Howard and no withdrawal motion was filed by Bagwell.

The record reflects Howard's first appearance on Simmons's behalf occurred when he filed motions for discovery and continuance on July 24, 1992. A hearing was held on Simmons's continuance motion on July 27, 1992. Howard told the trial judge that he was scheduled to retry a capital felony murder case on

August 17th, and he said that there was no way he could be ready to try Simmons's case on August 13th. The judge responded by denying the requested continuance and stating Simmons had been in jail for six or seven months, his drug case was simple and counsel, Howard, had had forty-five days to prepare for trial, which was long enough.

█ Ark. R. Civ. P. 27.3 provides the court shall grant a continuance only upon a showing of good cause and that a motion for continuance is addressed to the sound discretion of the trial judge and his or her judgment will not be reversed on appeal in the absence of clear abuse. *Loggins* v. *State*, 271 Ark. 616, 609 S.W.2d 76 (1980). Here, the trial judge gave sound reasons for denying a continuance, and Simmons offers no proof or argument that Mr. Howard was unprepared or otherwise hampered when representing Simmons at trial.

Related to his continuance argument, Simmons also contends the trial judge demonstrated prejudice towards him, and for that reason, the judge should have recused. Simmons's counsel, Howard, asserts that, during the hearing on Simmons's continuance motion, the trial judge became upset over Howard's remarks when he mentioned the district's Drug Task Force and what he characterized as the Task Force's "recent published problems." The trial judge stated Howard's comments were not fair and were "condemning somebody without evidence." Howard explained he was seeking reports relating to the disappearance or discrepancies of drugs the Task Force had had in its possession because Simmons's defense was "he did not have drugs and if they found drugs, someone planted them on him." The judge then responded, "I don't know anything about that, and that's fine, and in other words, if you're entitled to it, you prepare the order and you've got it."

Howard and the prosecutor then exchanged remarks concerning what evidence may or may not be discoverable involving the Drug Task Force, and the trial judge interjected "that you both know the laws of discovery well enough that you can comply with the rules of discovery without hassling about it." Then, abruptly switching back to his earlier expressed need for a continuance, Howard told the court, "Well, like I said before, Your Honor, I have several cases that have been set on the docket

prior to this trial, prior to this case." The court again responded, "Either Mr. Bagwell is going to represent Mr. Simmons, or you are going to represent him on August the 13th. You are going to be here. If you're not here, I'll send after you, Mr. Howard."

In sum, Simmons argues his attorney interpreted the trial judge's actions and statements, including his threat to send the sheriff after counsel, as an objective ·demonstration of prejudice. We must disagree. As we have recently said, the decision to disqualify from a case is discretionary with a judge and a judge's decision in this regard will not be reversed absent an abuse of that discretion. *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993).

From our reading of the record, clearly the trial court's objective was to try Simmons's case on August 13, because Simmons had been incarcerated for about seven months. He viewed the case as uncomplicated and further expressed that the discovery differences defense counsel had with the state could be resolved, if necessary, by the court's order. At the recusal hearing, the trial judge explained that he would expect *any* trial counsel to appear when his or her client's case was called on the docket; if counsel failed to appear, the judge would determine why counsel did not show, and, if necessary, send the sheriff for a contempt hearing. The judge added that he had always treated Howard fairly, and Howard agreed, saying that was why he expected having no problem in obtaining a continuance in Simmons's case. The record, we believe, reflects nothing that shows the trial judge .could not impartially try Simmons's case, and absent some objective demonstration of prejudice, we will not reverse the judge's ruling on disqualification. *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983).

Simmons's third and fourth points we consider together. Both points involve hearsay objections to testimony given by state witnesses Lavonne Davis and Particia Matthews.

Lavonne Davis had been arrested on a separate drug offense on January 21, 1992, and at that time, he spoke with Officer Ron Poole about Simmons. It was this information from Davis which in main part led to the arrest of Simmons and the search of his car and two residences. Simmons did not challenge Simmons's arrest or search, and at trial, the crack cocaine rocks found in Sim-

mons's residences and car were admitted into evidence without objection. However, the state placed Davis on the stand to testify to what he had previously told Poole on January 21, and Simmons argues such elicited testimony was hearsay and inadmissible. The testimony follows:

State: What did you tell Mr. Poole?

Davis: It — he asked me did Leon [Simmons] have any dope in the car?

State: What did you tell him?

Davis: I told him *there was some people come by looking for him and they said he had some*, asked me did I have any.

Howard: *Objection again to hearsay.*

Court: *The objection as to hearsay part of it is sustained.*

State: Bunny, I don't want to know what the girls told you.

Davis: Okay.

State: I want to know what you told Mr. Poole, going at it around about way.

Davis: That Leon had some dope in the car.

State: You told Mr. Poole what? Those words?

Davis: Yes, sir.

Howard: Your Honor, *I'd like to object to that. Number one, he's indicated he didn't even talk to Leon Simmons that day. How does he have any personal knowledge what Mr. Simmons had in his car, unless someone else told him? It's hearsay objection I'm making.*

Court: *Overruled.* (Emphasis added.)

Simmons's second hearsay objection goes to testimony elicited from Patricia Matthews, who was living with Simmons at the time of his arrest, and it was her apartment in which some of the cocaine was found. While she was on the stand, the following

occurred during direct:

> State: What was the nature of your conversation with Mr. Simmons? Why did you confront him?

> Matthews: *Because I heard that he was selling drugs and I asked him if he was selling drugs.*

> Howard: *Your Honor, I'm going to object again. We're going to some hearsay.* She hadn't testified yet to seeing him with any drugs. She heard something about some drugs.

> Court: The *objection* to the last question is *overruled.* (Emphasis added.)

Simmons argues Davis's and Matthews's statements were hearsay because they were elicited to prove the matter asserted, namely, that Simmons was selling dope. The state contends that Davis's testimony showed in part the probable cause basis for the officers having stopped and arrested Simmons and having searched his car and two residences. Concerning Ms. Matthews's testimony, the state urges that information gained from others that Simmons was selling dope merely showed the reason or basis for confronting Simmons sometime prior to his arrest and the search, and telling him she did not want drugs in her apartment where Simmons resided.

As previously mentioned, Simmons never challenged the officers' search of his car and apartment, so the evidence gained as a result of the searches was admitted without objection. Probable cause in this case had no relevance and the state's use of Davis's remarks to Poole could only be of value to reinforce in the jurors' minds that Simmons was selling drugs. And while Matthews's testimony, too, bears some indicia of hearsay problems, we should quickly add that, in view of the overwhelming nature of the evidence against him, Simmons has not demonstrated that, even given error in the admission of such testimony, prejudice resulted. *Gage v. State*, 295 Ark. 337, 748 S.W.2d 351 (1988).

As pointed out, the state introduced without objection the bags of cocaine found in Simmons's residences and car. In addition, Lavonne Davis testified that he personally had obtained crack cocaine from Simmons, sold it and returned a portion of the

proceeds to Simmons. Davis testified that, during the six-month period prior to his and Simmons's arrest, he had gotten crack cocaine from Simmons on nine or ten occasions, he sold it and after the sales, he gave money to Simmons who would give Davis a new supply.[1] Such testimony clearly portrayed to the jury Simmons's intended use of the crack cocaine found in his possession when he was arrested. In view of this overwhelming evidence of guilt, Simmons simply fails to show that prejudice resulted from either Davis's or Matthews's testimony.

Simmons's final point involves a hearsay argument as well. On cross-examination of Officer Poole, defense counsel asked whether the items seized from Simmons's residences and car had been dusted for prints. Counsel further asked, "If you really wanted to know if this [stuff] was Leon Simmons's and he had touched it ... you'd ask the Crime Lab to dust for fingerprints ... wouldn't you? Poole said, "I've got . . . instructions from the Crime Lab on matters such as this, and I'll be glad to explain it to you if you'd like." Counsel told Poole no. On redirect, the prosecutor asked Poole to explain what the Crime Lab's instructions were concerning fingerprint analysis of items such as the ones seized from Simmons. Over Simmons's hearsay objection, Poole was allowed to say, "They told us that items like this are not likely to produce any fingerprints . . . and they asked us not to submit items like that."

▪ The simple answer to Simmons's argument here is that he opened the door for Poole to explain why he had not sought fingerprint analysis from the Crime Lab when defense counsel, himself, asked Poole would he not have asked the Crime Lab to dust for fingerprints if Poole really wanted to show Simmons possessed or touched the contraband found in his car and residences. *See Dyas* v. *State*, 260 Ark. 303, 539 S.W.2d 251 (1976). The state only had Poole explain that the reason he did not seek fingerprint analysis in this case was because the Crime Lab had requested officers not to do so on certain items like those

---

[1] *Simmons objected to this testimony below as being irrelevant, but the trial judge allowed the testimony under Ark. R. Evid. 404(b) to show Simmons's intent when having the crack cocaine in his possession at the time of his arrest. Simmons does not challenge the trial judge's ruling in this appeal.*

found in Simmons's possession.

In conclusion, because Simmons has been sentenced to life imprisonment, the record has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) and other prejudicial errors have not been found. Therefore, we affirm.