John KAIL *v.* STATE of Arkansas

CR 99-667                                      14 S.W.3d 878

Supreme Court of Arkansas
Opinion delivered April 20, 2000

*L.T. Simes, II,* Judge;

*Paul N. Ford,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Mac Golden,* Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. The appellant, John Kail, was charged with capital murder under Ark. Code Ann. § 5-10-101 (Repl. 1997) for knowingly and with premeditated and deliberated purpose causing the death of a Larry Chappell on October 2, 1997. He was accused of purchasing an SKS 7.62 rifle on October 2, 1997, and, with deliberation, purposefully using said rifle to shoot and kill Larry Chappell, who was appellant's father-in-law. Appellant was convicted by a jury of murder in the first degree and sentenced to life in prison.

Appellant asserts the following four points on appeal:

The trial court erred in granting the State's request to prohibit evidence presented by appellant regarding circumstances arising to a level of extreme emotional disturbance;

The trial court erred in denying appellant's request that the court recuse based upon improper *ex parte* communications with the family of the decedent;

The trial court erred in refusing to inquire as to the nature of the contact between witnesses and jurors prior to the conclusion of the case;

The trial court erred in denying appellant's motion for a new trial.

We find no error on the part of the trial court and hereby affirm the conviction and life sentence of appellant.

## I. Prohibition of Evidence

The evidence adduced at trial revealed that on October 2, 1997, at approximately ten o'clock in the morning, appellant went to the home of a neighbor, William Ishmael, and asked Mr. Ishmael to drive him to a pawn shop because he wanted to buy an SKS rifle. Mr. Ishmael drove appellant to the pawn shop, where appellant purchased the weapon. The two then proceeded to the local Wal-Mart store and purchased shells. Then, after purchasing some beer, the two drove out to an area where they could fire their guns, according to Mr. Ishmael.

After shooting for a while, appellant asked Mr. Ishmael to drop him off near a small shed off Highway 284. This drop-off point was less than one-half mile from the victim's residence. Mr. Ishmael testified that appellant told him a friend would be picking him up there to go hunting, although it was not gun season, according to Mr. Ishmael, it was bow season. Mr. Ishmael testified that it was probably around noon when he dropped appellant off near the shed.

Valerie Chappell, wife of the deceased, testified that sometime between eight and nine o'clock, on the evening of October 2, 1997, gunshots began being fired into her residence near the patio. She testified that her daughter, Kim Chappell Kail, ex-wife of the appellant, was staying at her home and had already gone to bed when the shooting commenced. Mrs. Chappell stated that her husband was wounded by one of the shots and that she saw the appellant standing inside the patio doors with the rifle in his hand. Mr. Chappell later died as a result of the gunshot wound.

At trial, appellant attempted to offer evidence regarding alleged marital discord between appellant and the deceased's daughter, Kim Chappell Kail, in an attempt to prove that appellant was suffering from an "extreme emotional disturbance" for which there is a reasonable excuse, as set forth in Ark. Code Ann. § 5-10-104 (Repl. 1997), in order to justify a lesser included instruction for manslaughter. The trial court precluded appellant from offering said evidence. Further, the court precluded the appellant from offering any evidence from medical experts or psychological experts to establish an extreme emotional disturbance.

The trial court upheld the position taken by the State that pursuant to the cases of *Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997) and *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992), a criminal defendant is not entitled to present any evidence whatsoever with respect to a claim of extreme emotional disturbance for which there is a reasonable excuse, in the absence of some physical provocation in close proximity to the homicide. Appellant contends that this ruling is in error when applied to the case at bar and that, as a result, he was denied a fair trial. Appellant contends that the court's refusal to give the lesser included instruction of manslaughter amounted to error because he contends it is reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence. *See Spann, supra.*

■ We have held that a trial court is accorded wide discretion in evidentiary rulings and will not be reversed on such rulings absent a manifest abuse of discretion. *See Skiver v. State*, 336 Ark. 86, 983 S.W.2d 931 (1999). Here, the trial court found the evidence sought to be admitted by appellant to be remote, due to a lack of provocation; further, the court found the evidence to be prejudicial, confusing, and a waste of time under Ark. R. Evid. 403. The court explicitly stated, when appellant sought to present evidence of his marital strife and divorce from Kim Chappell Kail, the victim's daughter, that it did not want to have a divorce trial within the context of the appellant's criminal trial.

■■ Regardless of the trial court's reasons for determining that appellant's proffered evidence should be excluded, appellant has failed to demonstrate what prejudice he suffered by said exclusion by failing to establish how the inclusion of such evidence would

have provided a rational basis supporting a manslaughter instruction pursuant to Ark. Code Ann. § 5-10-104(A)(1). Appellant is correct in stating that an instruction on a lesser included offense should be given if it is supported by the slightest evidence. *See Spann, supra.* However, we have held that we will affirm a trial court's decision to exclude a lesser included offense instruction if there is no rational basis for giving the instruction. *Id.* We held in *Spann* that it is not error to refuse to give an instruction on manslaughter where there is no evidence of extreme emotional disturbance. *Id.* at 513, 944 S.W.2d at 539. We further held that:

> ...[P]assion springing from anger, resentment, fear, or terror will not alone reduce a homicide from murder to manslaughter; there must be a provocation inducing the passion such as physical fighting, a threat, or a brandished weapon which makes the passion irresistible.

*Spann*, 328 Ark. at 514-15, 944 S.W.2d at 540, quoting from *Rainey v. State,* 310 Ark. at 423, 837 S.W.2d at 455, *quoting Wooton v. State,* 232 Ark. 300, 337 S.W.2d 651 (1960).

■ Despite feelings of individuals who are suffering marital discord, the frustration, anger, and resentment that can result fails to constitute, on its own, a rational basis for giving an instruction on voluntary manslaughter. Whether expressed in terms of "heat of passion," (as it was formerly referred) or scientifically defined as "extreme emotional disturbance," *see Rainey,* 310 Ark. at 424, 831 S.W.2d at 456, the instruction requested by the appellant requires a basis in fact indicating that the appellant killed Larry Chappell in the moment following "provocation in the form of physical fighting, a threat, or a brandished weapon," as we stated in *Spann.*

Clearly, no evidence of provocation has been demonstrated in this case. Appellant argues that he had witnesses who would have testified that Larry Chappell had threatened to kill him in the past. However, the trial court ruled that this evidence would be hearsay and that it was unlikely such testimony would be otherwise admissible. Therefore, even in the face of the appellant's proffered hearsay evidence of *prior* verbal threats allegedly made by Larry Chappell, remote in time from the homicide, no evidence of provocation existed in this case.

The evidence adduced at trial is clear that appellant armed himself, invaded the victim's home, and shot him dead. It is true that his divorce from Mr. Chappell's daughter may have aroused unbalancing passion within the appellant, but absent any provocation, no rational basis existed upon which the trial court could instruct the jury on manslaughter due to extreme emotional disturbance.

■ As such, we hold that the trial court did not abuse its discretion in prohibiting such evidence.

## II. Recusal

■ This court has held that the decision to recuse is within the trial court's discretion, and that decision will not be reversed absent abuse. *See Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). Abuse must be proven by the party seeking to disqualify by showing bias or prejudice on the part of the trial court, and there exists a presumption of impartiality. *Id.*

Neither a review of the record in this case nor any demonstration by appellant in his brief reveals prejudice on the part of the trial court against the appellant. The trial court granted the appellant's pretrial motion to view the crime scene, that being the victim's home. On the day of trial, appellant filed a motion to recuse with the trial court. Appellant recounted that when he and his counsel viewed the crime scene, difficulties arose with the victim's wife who stated that she was going to "call the judge" and that she "had talked to him before and he said I can call him back if I need anything else." Appellant alleged in his motion to recuse and, likewise, argues on appeal that if communication had taken place between the court and the victim's wife, the court should have disqualified itself from the case.

The trial court denied the motion to recuse. In so doing, the judge stated that during the time of the appellant's visit to the crime scene, and while he was presiding over another trial in a different city, he received a call from his case coordinator, informing him that there was trouble at the crime scene because of the appellant's visit. The case coordinator had spoken to the victim's wife, and the wife had stated that she did not want the appellant in her home. The court noted that it was sensitive to the complaint because of

the order allowing the appellant to view the crime scene. The court then stated:

> I felt I should try to resolve the matter if at all possible, because one, we knew the trial was coming this day and I didn't know the extent of it, but it appeared to be an emergency situation. And I had my case coordinator to make certain that Mrs. Kail [*sic*] understood that I ordered the permission to view the scene; did not want to intrude upon her, but I had done so. And, under the circumstances, there was nothing else I could ask her to do but to cooperate. So, I hadn't heard anything from it until this morning.

The court noted that Canon 3(B)(7) (1999) of the Arkansas Code of Judicial Conduct supported its decision to communicate between the case coordinator and the victim's wife. The court further declared that the communication in no way gave any party a tactical advantage in the case; that the court was going to give each party a fair trial; and, that the court was not going to make any distinction or take any side in the case.

■ Based upon the record made by the trial judge regarding the contact between the court and the victim's wife, we do not believe the trial court abused its discretion in refusing to recuse. As the trial court noted, Arkansas Code of Judicial Conduct Canon 3(B)(7)(a) allows for communication outside of the presence of the parties when the circumstances require such contact "for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits ... provided: (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result ... and (ii) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond."

While it is true that the trial court did not promptly notify the parties of the communication, the court did explain the substance of the communication and allowed the parties to respond when it considered the appellant's motion. The court was quite explicit that it acknowledged the communication only to facilitate the court's order allowing the appellant to view the crime scene. As such, the trial court was clearly not biased or prejudiced against the appellant. Indeed, the court was assuring that the appellant received the relief requested pursuant to the granted motion to view the crime scene.

■ The appellant has failed to objectively demonstrate any point of prejudice on the part of the court which would call for this court to reverse the trial court's refusal to recuse. *See Simmons v. State*, 314 Ark. 310, 862 S.W.2d 245 (1993) (citing *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983)). While appellant alleges that prejudice lies in rulings made by the court later in his trial (which he challenges in other points in this appeal), we have clearly held that the mere fact that some rulings are adverse to the appellant is not enough to demonstrate bias. *See Gates*, 338 Ark. at 545, 2 S.W.3d at 48.

■ We hold that the trial court did not abuse its discretion in refusing to recuse in the instant case.

### III. Improper Contact with Jurors

After the appellant had rested his case at trial, and just before the trial court instructed the jury, the appellant asked the court to inquire of the jury as to whether any of its members had conversed with a witness. Appellant alleged that four jurors had been seen talking to a State's witness during the preceding break, although the judge had cautioned them at the beginning of the trial not to even "pass the time of day."

The prosecutor informed the court that the area in which the jurors and witness had been seen was the designated "smoking area" of the building, and that any persons — attorney, witnesses, or jurors — who wanted to smoke had to use that area. Defense counsel asked the judge to inquire as to what conversations, if any, had occurred between the jurors and the witnesses, in order to determine whether a mistrial would be necessary. The court refused to question the jurors or the witness. Appellant claims that he was, thereby, precluded from making any further record regarding the alleged conversations between these individuals.

■ We have held that the appellant bears the burden of demonstrating that a reasonable possibility of prejudice resulted from the alleged improper contact. *See Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995). Here, the appellant has failed to demonstrate what prejudice, if any, he has suffered as a result of the court's denial of his request to inquire regarding the alleged inappropriate contact between jurors and a witness. Appellant could have, at the

least, proffered the testimony of the person who allegedly saw the jurors and witness interacting; he failed to make such a proffer. Further, appellant produced no affidavits, either with his motion for new trial or with this appeal, which would demonstrate possible error.

We have held that reversible error cannot lie upon allegation alone. *See Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997) (noting that *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), established the rule that simply because error is committed, it is not presumed prejudicial). Furthermore, a mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial; and, the appellate court will not reverse a trial court's decision to deny a motion for mistrial except for an abuse of discretion or manifest prejudice to the complaining party. *See Griffin v. State, supra.* Moreover, the judge is accorded broad discretion in this regard, and while we note that a simple inquiry by the judge of the jurors, or the witness, or both, would have been the preferred method of addressing the situation, we cannot say that the trial judge abused his discretion by refusing to make an inquiry when we have not been presented with any demonstration of prejudice to the appellant as a result of the trial court's ruling. As such, we hold that the trial court did not abuse its discretion in this regard.

## IV. Motion for New Trial

The appellant filed a motion for new trial on the grounds that the trial court refused to inquire, or allow his counsel to inquire, as to whether any jurors had improper contact with a witness, and that the court failed to allow him the opportunity to make a record to support his recusal motion. The court never ruled on the appellant's motion for new trial; thus, it was deemed denied thirty days after it was filed, pursuant to Ark. R. App. P.—Crim. 2(a)(3) (1999).

The appellant's motion for new trial presented grounds which, in effect, mirror his arguments in points II and III, above; as such, because we have found no error on the part of the trial court with regard to points II and III above, we hold that the appellant's argument regarding the denial of his motion for new trial is moot, and need not be addressed.

## V. Rule 4-3(h) Compliance

In accordance with Ark. Sup. Ct. R. 4-3(h) (1998), the record has been reviewed for adverse rulings objected to by the appellant but not argued on appeal, and no reversible errors were found. We affirm appellant's judgment of conviction and sentence imposed.

Affirmed.