

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-16-811

JOSHUA JOHN JOHNSON

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered June 7, 2017

APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT
[NO. 42PCR-14-31]

HONORABLE JERRY D. RAMEY, JUDGE

AFFIRMED

## LARRY D. VAUGHT, Judge

Appellant Joshua John Johnson appeals his conviction by a Logan County jury of first-degree murder. On appeal, Johnson argues that the trial court erred by (1) admitting a blood sample and resultant lab report, (2) refusing to instruct the jury on manslaughter, and (3) refusing to exclude the victim's mother from the courtroom during the testimony of other witnesses. We disagree and affirm.

It is undisputed that on March 19, 2014, Johnson went to his ex-wife Lora Karras's home, and when she came outside to see what he wanted, he shot her with a shotgun. When Johnson saw that Karras was still alive, he shot her again in the head, killing her. At trial, Johnson asserted the defense of mental disease or defect, presenting evidence that he suffered from posttraumatic stress disorder (PTSD) resulting from his military service in Iraq and Afghanistan and that he also suffered from depression and alcohol abuse.

Cite as 2017 Ark. App. 373

At the outset of the trial, Johnson's counsel asked the court to invoke Rule 615 of the Arkansas Rules of Evidence, commonly known as "the rule," to exclude the victim's parents, Pam and Scott Boone, from the courtroom because they had both been subpoenaed to testify. The court instituted the rule but exempted the Boones as the victim's closest relatives, allowing them to remain in the courtroom to view the trial.

A blood sample, taken from Johnson on the day of the shooting, was initially misplaced by police but was located eight days later in the police station and sent to the state crime lab for testing. Johnson filed a pretrial motion to suppress all evidence relating to the blood sample and the resulting lab result, arguing that the State could not adequately establish chain of custody and that the sample had not been refrigerated for eight days prior to testing, which made the results unreliable. The court denied the motion to suppress but cautioned the State that it would be required to lay an adequate foundation for the evidence at trial. At trial, several witnesses testified about how the sample had been obtained from Johnson, how it had been misplaced, and how it had then been found eight days later. The evidence showed that officers had removed two test kits, used one to take Johnson's blood, and then erroneously placed the used kit back on the shelf in the breathalyzer room, where unused blood-test kits are stored. Don Riddle, a forensic toxicologist employed by the state crime lab, testified that he had tested the blood sample and that it contained a blood-alcohol content of .19 percent. Riddle also testified that lack of refrigeration for eight days would have had only a miniscule effect on the blood-alcohol content of the sample, increasing it by .01 or .02 percent at most. The court then asked defense counsel if Riddle's testimony "satisfied [his] concerns for this issue," to

which defense counsel replied, "It does, Your Honor." Riddle's report was entered into evidence without objection.

Johnson's brother, Fred Johnson, testified that he had been living with Karras, her husband, Robert Karras, and her children at the time of the shooting. Fred testified that he saw Johnson drive up to the home, get out of the car with a gun, and shoot Karras. Fred stated that Johnson looked intoxicated. Fred testified that Johnson told him to get out of the house, so Fred took the children and fled to a neighbor's home. The three children testified to the same, except that Johnson's son said that he had not seen or heard the shooting because he was in his bedroom at the time.

Johnson's wife at the time of the shooting (they had divorced by the time of trial), Jennifer Johnson, testified that, prior to the shooting, Johnson had been drinking and they had gotten into an argument. Jennifer testified that she told Johnson she was leaving and that he helped her pack her car. Jennifer also testified that Johnson suffered from PTSD, that he had been suicidal, and that she had taken him to the hospital the prior November because she feared he would kill himself. She had also asked the police to do a welfare check on Johnson on more than one occasion because she was afraid that he would harm himself. She testified that Johnson had developed depression after his last deployment.

Heather Chambers, an investigator with the Logan County Sheriff's Office, testified that she and other officers executed a search warrant for Johnson's home, where they discovered a 12-gauge shotgun, 56 shotgun shells, and an empty six-pack of an unspecified alcoholic beverage. Adam Craig, an associate medical examiner, testified that Karras's cause

of death was homicide caused by shotgun wounds to her head, back, and left forearm. The State rested, and Johnson moved for directed verdict, which the court denied.

As its first witness, the defense called Pam Boone. She testified that she is Karras's mother and explained Karras's marital history. She explained that Johnson and Karras's first child had been born when they were teenagers, that they were married when Karras was eighteen, and that after they divorced Karras married Thomas Capo in 2008 while Johnson was deployed. After Karras and Capo divorced, Karras discovered that Capo had sexually abused her oldest child, and Capo was ultimately convicted of an unspecified criminal offense stemming from the abuse. Karras then married Robert Karras. Boone testified that although they were still married at the time of Karras's death, the couple had not been living together. She testified that Johnson had, while home from deployment, spent the night with Boone and her husband in order to have visitation with his children.

Dr. Jon Matthew Fabian testified that Johnson suffered from PTSD, depression, and an alcohol-abuse disorder. The State's expert witness, Dr. Mark Peacock, disagreed, opining that Johnson killed Karras due to voluntary intoxication from alcohol, which is not a cognizable defense to murder. Dr. Lacey Willet Matthews also testified for the State and agreed with Peacock's assessment.

Three witnesses who had served with Johnson in Iraq and Afghanistan testified about certain events that Johnson had experienced, such as bombings and attacks, as well as the day-to-day stresses of their work. They also testified as to statements Johnson had made about financial and family stress at home.

On rebuttal, Karras's oldest daughter testified that she had witnessed a physical altercation between Johnson and her mom, in which Johnson slammed Karras against a wall and put her in a choke hold.

The defense renewed its motion for directed verdict. The defense then argued to the court that it was entitled to an instruction on the lesser offense of manslaughter, based on the idea that there was evidence that Johnson committed the crime while under extreme emotional distress due to his PTSD and depression. The court denied the request for a manslaughter instruction. Johnson was convicted and sentenced to forty years' imprisonment in the Arkansas Department of Correction. He filed a timely appeal.

Johnson's first point on appeal is that the trial court erred in admitting evidence and testimony relating to the blood sample that was taken from him on the day of the crime but was inadvertently misplaced by the police for eight days before it was sent to the state crime lab for testing. He argues that the State did not establish chain of custody and that the lack of refrigeration for eight days rendered the results of testing performed on the sample unreliable. We do not reach the merits of Johnson's argument because he waived it by assenting to the introduction of this evidence at trial. While it is true that Johnson filed a motion to suppress the blood-sample evidence, when the issue arose at trial, Johnson's counsel agreed that the State's witness from the crime lab, Dr. Riddle, had fully "satisfied [his] concern for this issue." When the State then moved to admit Dr. Riddle's report on the blood sample, the defense stated that it had no objection.

This case is similar to *Sales v. State*, 374 Ark. 222, 231, 289 S.W.3d 423, 430 (2008), in which the Arkansas Supreme Court held that an appellant had waived his objection to evidence

he had previously sought to exclude when he stated at trial that he had "no problem" with the admission of that evidence. It is axiomatic that an appellant's failure to make a contemporaneous objection prevents him from asserting on appeal any error on the part of the trial court for admitting the evidence. *McClain v. State*, 361 Ark. 133, 136, 205 S.W.3d 123, 124 (2005) (citing *Hardman v. State*, 356 Ark. 7, 144 S.W.3d 744 (2004); *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999)). Here, Johnson not only failed to make a contemporaneous objection to the admission of testimony and evidence about the blood sample at trial, but also affirmatively consented to the introduction of that evidence. As such, he waived the issue for appeal.

Johnson next argues that the court erred in refusing to instruct the jury on manslaughter. We have stated repeatedly that it is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *See Flowers v. State*, 362 Ark. 193, 213, 208 S.W.3d 113, 128 (2005); *Morris v. State*, 351 Ark. 426, 430, 94 S.W.3d 913, 915 (2003). However, we will affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Flowers,* 362 Ark. at 213, 208 S.W.3d at 128. Finally, we will not reverse a trial court's ruling regarding the submission of such an instruction absent an abuse of discretion. *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003).

While the statute defines manslaughter as a killing committed under extreme emotional disturbance for which there is a reasonable excuse, "[w]e have held repeatedly that, in order for a jury to be instructed on extreme-emotional-disturbance manslaughter, there must be evidence that the defendant killed the victim in the moment following some kind of

provocation, such as 'physical fighting, a threat, or a brandished weapon.'" *Boyle v. State*, 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005) (quoting *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 881 (2000)); *see also Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997). Passion alone will not reduce a homicide from murder to manslaughter. *Spann*, 328 Ark. at 514, 944 S.W.2d at 540.

Here, Johnson argues that his fight with his wife, her decision to leave him, and his PTSD created the kind of extreme emotional distress anticipated by the statute. However, in *Kail*, the supreme court affirmed the denial of a manslaughter instruction where the defendant had killed his father-in-law in the midst of extreme marital discord with his wife. The court recognized that his marital problems may have "aroused unbalanced passions" in the defendant but that a manslaughter instruction required proof of provocation. 341 Ark. at 94, 14 S.W.3d at 881. Here, we hold that the circuit court did not abuse its discretion in finding that Johnson had failed to present any evidence to support a manslaughter instruction.

Johnson's last point on appeal is that the court erred in refusing to exclude Pam Boone from the courtroom pursuant to Rule 615 of the Arkansas Rules of Evidence. Although she was a subpoenaed witness, the court allowed her to remain in the courtroom and observe the testimony of other witnesses because she is the victim's mother and closest family member. Johnson argues that the plain language of Rule 615 is mandatory and contains no exception for the victim's close relatives. Johnson is correct as to the substance of the rule, but his challenge on appeal fails because he cannot demonstrate that the court's ruling prejudiced him.

In *Clark v. State*, our supreme court addressed a similar challenge to a violation of Rule 615 and stated that "[p]rejudice is not presumed and we do not reverse absent a showing of

prejudice." 323 Ark. 211, 216–17, 913 S.W.2d 297, 300 (1996) (quoting *Wallace v. State*, 314 Ark. 247, 862 S.W.2d 235 (1993)). Johnson cannot demonstrate prejudice for two reasons. First, Johnson, rather than the State, called Boone as a witness during the guilt phase of the trial, indicating that despite her presence in the courtroom throughout the trial, he still viewed her testimony as beneficial to his case. Second, Boone's testimony was not prejudicial because it did not address any fact or issue in dispute. Boone testified as to her daughter's marital history, the fact that Johnson's brother lived with Karras at the time of her death, and the fact that one of the children had been sexually abused by Karras's second husband, Thomas Capo. Boone did not provide any negative or disparaging testimony about Johnson and did not testify about any material issues related to Johnson's defense of mental disease or defect. Because Johnson has not demonstrated that the court's failure to exclude Boone pursuant to Rule 615 was prejudicial, reversal is not warranted.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.