## WOOTTON *v.* STATE.

4975                                        337 S. W. 2d 651

Opinion delivered May 30, 1960.

[Rehearing denied September 12, 1960]

W. S. *Atkins, R. L. Searcy, Jr.,* for appellant.

*Bruce Bennett,* Atty. General by *Ancil M. Reed,* Asst. Atty. General, for appellee.

PAUL WARD, Associate Justice. Richard Wootton, appellant herein, was convicted of murder in the second degree and sentenced to 15 years in the State Penitentiary allegedly for killing one Ulice Miller in the late evening of October 17, 1959.

About noon on the above mentioned date appellant and the deceased, after completing a business transaction, planned to have a fish fry that evening at a designated site. It was also mentioned that others might be invited. Pursuant to this plan the deceased and one Dowell Clark went by appellant's home around 3 o'clock that afternoon and loaded appellant's boat on Clark's pick-up truck and then returned to the home of the deceased. Appellant purchased the necessary groceries and drove by deceased's home about 4 o'clock when the three white men decided to send three negro men ahead to the "water hole" in Clark's truck to make preparation for the fish fry. The three white men had some liquor, or one of them had some liquor, when they left the home of the

deceased for the fish fry, and on the way they bought and drank some more liquor, arriving at the designated site around 5 o'clock. Appellant took along a .351 caliber rifle, Clark took a .22 caliber rifle, and the deceased took a 12-gauge shotgun. Later, around 8:30 o'clock while supper was being served appellant and Clark engaged in a controversy, and presently in a fight, over a cup of coffee. It seems that one of the negro men filled appellant's cup too full of coffee after being told to only partially fill it. After this difficulty was apparently settled temporarily appellant and Clark engaged in one or two more fights in which the deceased intervened in behalf of Clark for the alleged reason that Clark was physically handicapped. The outcome of these difficulties was that appellant shot the deceased twice with his .351 rifle.

On appeal appellant relies on four designated grounds for a reversal of the judgment of the trial court. One challenges the sufficiency of the evidence, and relates to an Instruction refused by the trial court. The other three grounds challenge Instructions given by the court.

*One.* We cannot agree with appellant's contentions that the evidence is insufficient to support the conviction of murder in the second degree. Appellant's main point, in this connection, is that there is no evidence from which the jury could find the necessary element of malice. It is pointed out that the three white men involved had been the very best of friends up until the time this unfortunate occurrence took place. We agree that malice is a necessary element to constitute murder in the second degree. In *Ballentine* v. *State,* 198 Ark. 1037, 132 S. W. 2d 384 (at page 1039 of the Arkansas Reports) this Court said: "Malice, however, is a necessary element of murder, either in the first or second degree, and it must be either express or implied."

The testimony relied on by appellant in his brief is substantially as hereafter set out. One of the negro men, known as "Sundown", testified: We were all sitting around eating and I started to pour Mr. Wootton a

cup of coffee; he said he just wanted a half a cup and I had it a little fuller than he wanted — he squeezed the paper cup a little too tight and some of the coffee ran out on his hand; I started pouring him some coffee in a glass cup and Mr. Clark spoke up and said "He don't want no whole cup"; appellant looked around to Mr. Clark and asked what he had to do with it; they talked around a little bit but I don't know just what they said; I looked around when appellant reached up and snatched Mr. Clark off the bumper of his truck and Mr. Clark just lay there with his legs crossed; the deceased said "You all quit that"; then the deceased pulled appellant off of Mr. Clark, and they started back to eating. Later while I was standing with my back to them I looked around and saw that appellant had Mr. Clark down again; the deceased walked up and said "You boys stop this, we want to have a good time"; the deceased caught Mr. Wootton in the back of his shirt collar and said "Get up off of that boy, Richard" (meaning the appellant); we started eating again when appellant reached for Mr. Clark again and the deceased ran up to stop him and the next thing I knew appellant and the deceased were "tussling" around; the deceased walked toward the fire and appellant walked between the trucks — he took a gun out of a scabbard and said "I am going to kill both of you s---of--b----." I saw Mr. Miller as he was falling and he didn't have anything in his hands. Dowell Clark's testimony was substantially as follows: We were eating and "Sundown" was pouring coffee; the cup he poured for appellant was too full and he said "I told you to pour me a half a cup"; "Sundown" got a glass cup and poured appellant coffee in it — I told him to pour a half a cup and appellant jerked me down; the deceased talked to appellant and got him to get up; I got up and appellant ran into me and knocked me down and the deceased helped me up; the deceased got between us and he and appellant scuffled; the deceased got up and started walking toward the fire, and appellant got up and went to his truck and pulled the rifle out and said "I am going to kill both of you s---of--b------." One of the negro men named Easter testi-

fied in substance: Appellant told "Sundown" to get some coffee — he didn't want a full cup; from then on I don't know what happened until I saw appellant on Mr. Clark; and I didn't pay much attention; in a little while I saw appellant had Mr. Clark down again and about that time the deceased got on appellant; the next thing that came to my attention was appellant taking a gun out of a scabbard and when I heard the shooting I was gone. The other negro man, Anthony Herron, testified: It seemed like Clark hit appellant on the head with something and then appellant grabbed him around the leg and they went down — the deceased wasn't in it then but he got up and pulled appellant off of Clark and said "Don't fight that crippled man"; the deceased got appellant loose from Clark, but they all continued fighting again; while they were out there I heard a gun fire and I left — later I heard two shots. Appellant testified substantially as follows: About 8:30 o'clock we had just finished eating and a negro poured a cup of coffee — I reached and got my cup; I reached and got the one mug of coffee and Clark said: "I want that cup" and I said your wife ought to have fixed you a cup if you wanted one and the next thing I knew he hit me with a bottle, I just reached and knocked his feet out from under him and we piled up there — we were all three fighting; we fought over an area as big as 10 or 15 feet and when I knew anything Clark had got to his pickup and fired a shot; I broke loose from Miller and made for my pickup and Miller ran around to where Clark was — and I came to my truck and opened the door and drug my rifle out and said "S---o--b------ put your guns down and come out" and they said "You put yours down and come out." I said "No, it's two against one". They didn't say a word and when I knowed anything Miller came around within 50 feet and that is when I shot — it was dark; I fired two shots although I had more cartridges in my gun; I quit shooting because I saw Miller fall. I had known the deceased six or seven years and we were friends; when I first saw the man that I shot he was between the trees and he squared himself with a shotgun; I couldn't tell in the dim light

who it was; I fired the shot at the man I shot to save my life; I saw the gun and when he fell I quit shooting.

From the above it will be seen that there are some conflicts in the testimony of the eyewitnesses who were present. In the case of *Higgins* v. *State*, 204 Ark. 233, 161 S. W. 2d 400, this Court said: "It is a well settled rule that the evidence admitted at the trial will, on appeal, be viewed in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict of the jury, it will be sustained", citing cases. Viewed in that light we are unable to say there is no substantial evidence to support the verdict of the court in this instance.

While malice is a necessary element of the crime for which appellant was convicted it is well settled by the decisions of this Court that malice may be implied from the facts and circumstances in the case, and it is our opinion that the facts and circumstances in this case justify an implication of malice on the part of appellant. In the case of *Clardy* v. *State*, 96 Ark. 52, 131 S. W. 46, we find this statement: "The law will imply malice where there is a homicide with a deadly weapon and no circumstances of mitigation, justification or excuse appear; and proof of a homicide under such circumstances will warrant a conviction of murder in the second degree. The passion that will reduce a homicide from murder to manslaughter may consist of anger or sudden resentment, or of fear or terror; but the passion springing from any of these causes will not alone reduce the grade of the homicide. There must also be a provocation which induced the passion, and which the law deems adequate to make the passion irresistible." We find nothing in the testimony to force the conclusion that appellant was faced with such provocation that it induced in him a sudden and irresistible passion such as would be necessary to reduce the crime of second degree murder to that of voluntary manslaughter.

In view of what we have heretofore said we cannot, of course, agree with appellant's contention that the court committed reversible error in refusing to give the

Requested Instruction No. 2. This Instruction reads: "You are instructed to find the defendant not guilty of murder in the second degree."

*Two.* It is here insisted that the trial court erred in giving its Instruction No. 1. This is a very lengthy general Instruction covering the different degrees of homicide and it would serve no useful purpose to set it out in full. Appellant's principal contention is that the instruction was argumentative and placed special emphasis on murder in the second degree. We are unable to agree with this contention. In this Instruction the court first told the jury that "Under the indictment it is competent for you, if you think the evidence justifies it, to convict the defendant of murder in the first degree, murder in the second degree, or of manslaughter, or to acquit him outright." Appellant cannot complain that he was convicted of a lower degree of crime when he could have been, under the Instruction, convicted of a higher degree. See *Bone* v. *State,* 200 Ark. 592, 140 S. W. 2d 140. We have read the Instruction carefully and cannot agree with appellant that the Instruction places special emphasis on the crime of murder in the second degree.

In addition to the above it is pointed out that appellant made no proper objection and exception to the above mentioned Instruction. Before any of the court's Instructions, consisting of sixteen in number, were given but after they had been discussed with the court appellant offered "a general objection to all of the Instructions to be given by the court." This being a general objection *en masse* it does not properly present a question for the decision of this Court if any one of the Instructions is good. Some of the sixteen are not challenged. See *Neal et al* v. *Peevey,* 39 Ark. 337 and *Jones* v. *State,* 226 Ark. 566, 291 S. W. 2d 501. In addition to the form of the objection referred to above we fail to find that appellant saved his exceptions to the giving of the Instruction. This was necessary. See *Yarbrough* v. *State,* 206 Ark. 549, 176 S. W. 2d 702, and the cases cited therein.

*Three.* It is insisted by appellant that the court erred in giving its Instruction No. 7 regarding the law of self-defense, to parts of which he had a proper objection and exception. In this Instruction, among other things, the court said: "If there was no danger, and his belief in the existence thereof be imputable to negligence, he is not excused, however honest the belief may be." We find, however, that this same language was approved in the case of *Smith* v. *State,* 59 Ark. 132, 26 S. W. 712.

It was insisted by appellant that Instruction No. 7 was erroneous in that it permitted the jury to find that appellant provoked or invited the deceased to make the attack on him. Again we are unable to agree with appellant's contentions. As pointed out above, and taking the evidence in the light most favorable to the State, there was testimony, we think, from which the jury might have reached that conclusion.

*Four.* Finally, appellant insists that the court erred in giving its Instruction No. 11 regarding reasonable doubt. We have read this Instruction carefully and in our opinion it is a correct statement of the law. It is also pointed out that the objection to this Instruction was the same as that made to Instruction No. 1 heretofore discussed, and that likewise no exception was saved to the giving of the Instruction. Therefore, as heretofore pointed out, no question is properly presented for this Court's consideration.

In addition to the above appellant brought forward a number of alleged errors in his motion for a new trial, many of which relate to instructions given and refused by the court. In most instances we find no proper objections were made and no exceptions saved, however, we have carefully examined each of these assignments and find in them no reversible error.

It is our conclusion, therefore, that the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.

JOHNSON, J., dissents.