Cite as 2023 Ark. App. 227

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-404

| | | |
|---|---|---|
| KRISTOPHER GOULD | | Opinion Delivered April 19, 2023 |
| | APPELLANT | APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT [NO. 56CR-20-227] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE PAMELA HONEYCUTT, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Kristopher Gould appeals his December 9, 2021 conviction on a charge of felony negligent homicide, in violation of Arkansas Code Annotated section 5-10-105(a)(1)(A), (B) and (a)(2) (Repl. 2013). He argues that the circuit court committed reversible error when it denied his motion for directed verdict because the State did not prove each element of negligent homicide and when it did not allow a jury instruction on the lesser-included offense of misdemeanor negligent homicide. We affirm.

I. *Facts and Procedural History*

On June 12, 2020, the State filed an information alleging that Gould had committed the crimes of negligent homicide, a Class B felony, in violation of Ark. Code Ann. § 5-10-105(a); and of possession of an open container containing alcohol in a motor vehicle, a Class C misdemeanor, in violation of Ark. Code Ann. § 5-71-218 (Supp. 2021). The charges

stemmed from allegations that Gould hit and killed Preston Brayfield as a result of his driving his car while intoxicated and at a high rate of speed through a construction zone where Brayfield was doing roadwork on Interstate 555 North near Tyronza.

A jury trial was held on December 7–8, during which the State offered testimony from several witnesses. Arkansas State Police Trooper Tommy Fitzgerald, who investigated the fatal vehicle accident, explained that the accident happened on May 30 on I-555 North in a construction zone on a bridge at the Tyronza River. Trooper Fitzgerald said he arrived at the scene around 7:44 p.m., and he confirmed that it was still daylight at the time. Trooper Fitzgerald testified that he used measurements taken at the scene to produce computer-generated diagrams depicting the accident at precrash, crash, and postcrash stages. Using the diagrams, Trooper Fitzgerald explained that the inside northbound lane of traffic on I-555 had been closed—indicated by orange barrels—up to two miles ahead of the construction zone where Brayfield was working at the time of the accident.

Trooper Fitzgerald testified that, from the debris, blood, and other evidence at the scene, he determined that the fatal impact took place in the closed northbound lane. Among the evidence in the closed lane, Trooper Fitzgerald found Brayfield's body, including his right leg, which had been traumatically amputated in the accident, as well as Brayfield's hat and boot. Trooper Fitzgerald noted that tire markings at the scene indicated that, after the impact, Gould's car left the closed northbound lane, crossed over the open northbound lane of traffic and shoulder, and ultimately rolled over in an adjacent field. Trooper Fitzgerald testified that he had "[n]o doubt whatsoever" that the impact occurred inside the closed lane

2

of traffic at the construction site, but he was unable to determine exactly when Gould had entered the closed lane.

Trooper Fitzgerald also testified that, when he talked to Gould at the scene, he smelled "an odor of intoxicants coming from [Gould]" and observed that "[Gould's] eyes were bloodshot[,]. . . [and] his speech was slurred." Additionally, Trooper Fitzgerald saw "a cooler in the front floorboard" of Gould's car "as well as a bunch of empty [Busch Light] beer cans." He stated that he found more Busch Light beer cans and a bottle of liquor inside the cooler. Also, "in the debris field from where [Gould's] car had rolled over, [he] noticed there was a Busch Light can in . . . a neoprene koozie." Trooper Fitzgerald noted that Gould admitted to him "that he drank some earlier that day."

Trooper Fitzgerald pointed out that he obtained a warrant for a blood draw and transported Gould to a hospital where he watched hospital staff draw Gould's blood. He subsequently took custody of the blood sample and personally delivered it to the Arkansas State Crime Laboratory.

Lauren Havens, a forensic toxicologist with the Arkansas State Crime Laboratory, testified that she analyzed Gould's blood sample and determined that the blood-alcohol concentration was 0.326, or approximately four times more than the "legal limit" of 0.08.

Corporal Jay Bryan with the Arkansas State Police testified as an expert in the field of event-data recording. He said the "black box"—or event-data recorder—from Gould's car indicated that the airbag deployed when the car collided with Brayfield in a frontal impact. He said it also showed that the car was traveling at a rate of ninety-five miles an hour two

3

and a half seconds before the impact and that the brakes were not engaged at that point. Corporal Bryan stated that the brakes were engaged somewhere between two and two and a half seconds before the impact. He testified that at one and a half seconds before impact, the car was traveling at seventy-one miles an hour, and at a half second before impact, it was traveling at sixty-seven miles an hour. Corporal Bryan explained that, allowing a 4 percent margin of error for the speedometer, he calculated a speed range of between sixty-nine and seventy-three miles an hour at the time of impact.

Jennifer Forsyth, a forensic pathologist with the Arkansas State Crime Laboratory, testified that Brayfield's death was caused by "multiple blunt force injuries," including multiple dislocated and fractured bones; tears in his brainstem, spinal cord, aorta, esophagus, trachea, liver, spleen, and lungs; "and a traumatic amputation of the right lower leg." She testified that no other factors contributed to Brayfield's death, noting he was "a well-developed, well-nourished white adult male[.]"

After the State rested, and again after the close of all the evidence, Gould unsuccessfully moved for a directed verdict on the ground that the evidence was insufficient to prove that he negligently caused Brayfield's death. Gould also unsuccessfully requested and thereafter proffered a jury instruction on misdemeanor negligent homicide, which specifically included language that "[he] negligently caused the death of Preston Brayfield."

Gould argued that there was a rational basis in the evidence from which the jury could conclude that Brayfield's death was not caused by his operating a vehicle while intoxicated or with a blood-alcohol concentration of 0.08 or more, suggesting instead that "[i]t could be

as a result of [Brayfield's] stepping out in front of traffic[.]" The circuit court denied Gould's request to give the proffered instruction and instructed the jury only on felony negligent homicide.

The jury found Gould guilty of negligent homicide, and he was sentenced to fifteen years in the Arkansas Department of Correction pursuant to a sentencing order entered on December 9. Gould filed a timely notice of appeal on January 6, 2022.

II. *Discussion*

A. Sufficiency of Evidence Regarding Negligent Homicide

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *McEuen v. State*, 2023 Ark. App. 65, at 5, 660 S.W.3d 615, 619. In reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State, considering only evidence that supports the verdict. *Id*. We will affirm the verdict if substantial evidence supports it. *Id*. at 6, 660 S.W.3d at 619. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id*. Substantial evidence may be direct or circumstantial. *Id*. But circumstantial evidence is substantial only if it excludes every reasonable hypothesis other than the guilt of the accused. *Id*.

The jury may consider evidence in light of the jurors' observations and experiences and is entitled to draw reasonable inferences from the evidence. *King v. State*, 2021 Ark. App. 339, at 3–4. Witness credibility is also an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting

5

testimony and inconsistent evidence. *E.g.*, *Swanigan v. State*, 2019 Ark. App. 296, at 9, 577 S.W.3d 737, 745.

"A person commits the offense of negligent homicide if he . . . negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle . . . [w]hile intoxicated[]" or with "an alcohol concentration of eight hundredths (0.08) or more in [his] breath or blood based upon the definition of alcohol concentration in § 5-65-204, as determined by a chemical test of [his] blood, urine, breath, saliva, or other bodily substance." Ark. Code Ann. § 5-10-105(a)(1)(A), (B) & (a)(2). A person "acts negligently with respect to attendant circumstances or a result of his . . . conduct when [he] should be aware of a substantial and unjustifiable risk that the attendant circumstances exist, or the result will occur." Ark. Code Ann. § 5-2-202(4)(A) (Repl. 2013). The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor. Ark. Code Ann. § 5-2-202(4)(B).

In order to sustain a conviction, the State was required to prove that Gould negligently caused the death of Brayfield. Gould notes that the State did not present any witnesses who observed the location of the impact, nor did the State present any video recordings or any other direct evidence as to which lane Gould's vehicle was in when it struck Brayfield. Gould submits that without this type of direct evidence, the State was forced to rely on circumstantial evidence to prove that he negligently caused Brayfield's death. He

reiterates that circumstantial evidence is substantial only if it excludes every reasonable hypothesis other than the guilt of the accused. *McEuen, supra.*

Gould acknowledges that the State presented evidence that he struck Brayfield with his automobile while Brayfield was employed at a worksite on I-555 as well as evidence that Brayfield died because of this collision. Gould does not dispute that the State also presented evidence that he was traveling well above the speed limit and that he had a blood-alcohol level approximately four times the legal limit. He even admits that the State presented evidence that at some point, Gould's vehicle crossed into the traffic lane that was closed for construction; however, he points out that the State presented *no* direct evidence as to whether Gould's vehicle entered the restricted lane before or after striking Brayfield. He asserts that the State likewise did not present direct evidence as to where the point of impact was, implying that the State's proof did not show which lane Gould's vehicle was in when it struck Brayfield.

Gould argues that without such proof, the State failed to negate the reasonable explanation that Brayfield may have accidentally stepped into Gould's lane of traffic, thereby causing the collision. He contends the State presented no evidence to rule out what he calls a plausible hypothesis. Accordingly, Gould asserts that the State failed to prove the element of causation, and the circuit court erred in failing to grant his motion for directed verdict.

We disagree, and the evidence in the record before us supports the finding that Gould caused Brayfield's death by negligently driving his car into Brayfield in a construction zone where Brayfield was doing roadwork. It was still daylight when the accident occurred, and

the existence of the construction zone was clearly marked with orange barrels closing the inside northbound lane of traffic for approximately two miles ahead of the area where Brayfield was working at the time of the incident. Evidence was also presented that Gould was driving in the closed traffic lane when he fatally struck Brayfield. But even if the fatal impact occurred in the open—rather than closed—traffic lane, as Gould suggests could have occurred, his conduct was no less criminally negligent.

No matter which lane he was in, evidence was presented that Gould was driving at a speed of ninety-five miles an hour less than three seconds before he struck Brayfield through what was a clearly marked construction zone. He did not hit the brakes until a mere two seconds before he made frontal impact with Brayfield's body at a speed of between sixty-nine and seventy-three miles an hour. Additionally, consistent with testimony that Gould had alcohol in his car, smelled of alcohol, had bloodshot eyes and slurred speech, and admitted he had been drinking, an undisputed blood test indicated he had a blood-alcohol concentration of 0.326—four times the legal limit—at the time of the accident.

Accordingly, we hold that sufficient evidence was presented at trial from which the jury could reasonably conclude that Gould's failure to perceive the risk in driving while intoxicated and at high speed through a well-marked construction zone "involved a gross deviation from the standard of care that a reasonable person would observe" as required by section 5-2-202(4)(B). Also, we reject Gould's factually unsupported suggestion that Brayfield may have been negligent by stepping into the open traffic lane and hold that "contributory negligence would not lessen [Gould's] culpability." *See Courtney v. State*, 14 Ark. App. 76, 78,

684 S.W.2d 835, 836 (1985) (affirming a negligent-homicide conviction supported by evidence that street was well lighted, and the appellant was speeding, under the influence of alcohol, and never applied his brakes before he hit pedestrian).

## B. Jury Instruction on Misdemeanor Negligent Homicide

A circuit court's ruling on whether to give a jury instruction will not be reversed absent an abuse of discretion. *Bragg v. State*, 2021 Ark. App. 381, at 8. The refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence; however, we will affirm the circuit court's decision to not give an instruction on a lesser-included offense if there is no rational basis for doing so. *Id.* at 8–9.

Here, the circuit court rejected Gould's request for the jury to be instructed on misdemeanor negligent homicide. The Arkansas Code has a specific statute that deals with lesser-included offense:

> (b) A defendant may be convicted of one (1) offense included in another offense with which he or she is charged. An offense is included in an offense charged if the offense:
>
> > (1) Is established by proof of the same or less than all of the elements required to establish the commission of the offense charged;
> >
> > (2) Consists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged; or
> >
> > (3) Differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission.

Ark. Code Ann. § 5-1-110 (Repl. 2013).

9

Gould submits that the circuit court erred in refusing to give the proffered misdemeanor negligent-homicide jury instruction. He claims that there is no dispute that the misdemeanor version of negligent homicide is a lesser-included offense of the felony version. Gould notes the main difference between the two offenses at issue here is whether alcohol was involved in the commission of the crime. Gould argues that he needed only a rational basis in order to require the circuit court to instruct the jury on misdemeanor negligent homicide. Although Gould concedes the State presented evidence as to the presence of alcohol, he notes that the jury was not required to believe that evidence. *Swanigan*, *supra.*

Gould argues that here, the circumstances surrounding the alleged criminal act provide a rational basis for the proffered jury instruction because the jury could have rejected the State's assertion that Gould's level of intoxication was the proximate cause of Brayfield's death. He submits that by denying the jury the opportunity to consider the misdemeanor instruction, the circuit court ignored the rational basis that supported the instruction—that non-alcohol-related negligence was the proximate cause of Brayfield's death. He claims that by withholding the misdemeanor instruction, the circuit court superseded the jury's role as fact-finder in this case.

We disagree and hold that the circuit court did not abuse its discretion by denying Gould's request for a jury instruction on misdemeanor negligent homicide. Arkansas Code Annotated section 5-1-110 provides that a circuit court is not obligated to instruct on a lesser-included offense unless there is a rational basis for concluding that the criminal defendant

10

might be acquitted of the crime charged and convicted of the lesser-included offense. *Burks v. State*, 2022 Ark. App. 494, at 17, 657 S.W.3d 180, 189. This court will not reverse a circuit court's ruling on whether to submit a jury instruction absent an abuse of discretion. *Harmon v. State*, 2020 Ark. 217, at 13, 600 S.W.3d 586, 594. Under these standards, we hold that the circuit court properly excluded Gould's proffered instruction.

Gould was charged with, and the jury was instructed on, the offense of negligent homicide committed under circumstances constituting a Class B felony, which required proof that he negligently caused the death of another person as a result of operating a vehicle "[w]hile intoxicated[]" or with "an alcohol concentration of eight hundredths (0.08) or more in [his] breath or blood[.]" Ark. Code Ann. § 5-10-105(a). Gould's proffered instruction states, the offense of negligent homicide committed under circumstances constituting a Class A misdemeanor, on the other hand, merely requires proof that a person "negligently cause[d] the death of another person." Ark. Code Ann. § 5-10-105(b). The evidence in the record before us supports the circuit court's finding that there was no rational basis for giving an instruction on misdemeanor negligent homicide. Accordingly, the circuit court did not abuse its discretion by denying Gould's proffered instruction. *See, e.g., Harmon, supra.*

Gould's argument that he was entitled to the proffered instruction because "the jury could have rejected the State's assertion that [his] level of intoxication was the proximate cause of Mr. Brayfield's death" and could have concluded, instead, that Brayfield's death was caused by "non-alcohol related negligence" is of no moment and does not accurately reflect what is required to sustain a conviction for felony negligent homicide. The State need only

11

have proved that Gould negligently caused Brayfield's death "as a result of operating a vehicle" and that, "at that time there [was] an alcohol concentration of eight hundredths (0.08) or more" in his blood, as determined by a chemical blood test, which it easily did. Ark. Code Ann. § 5-10-105(a)(1)(B)(i).

Not only does Gould fail to dispute the evidence supporting the additional elements required for felony negligent homicide—namely, evidence that he was driving his car at a high rate of speed in a construction zone when he collided with and, consequently, killed Brayfield when his blood-alcohol concentration was well over the "legal limit" of 0.08—he acknowledged it. He did not dispute the chemical-blood-test evidence, which established that, at the time of the fatal-vehicle accident, he had a blood-alcohol concentration of 0.326— nearly four times the "legal limit." Nor did he dispute the medical testimony, which established that Brayfield's fatal injuries were caused by the impact from the high-speed collision. Rather, in his closing argument, Gould's attorney conceded that "[Gould] had been drinking . . . .We haven't disputed that at all[.]" He also admitted that Gould had been driving "faster than he should have been[,]" adding, "We'll give you that, too." Here, there was no rational basis on which to give the proffered negligent-homicide instruction that merely omitted additional elements, the proof of which was supported by undisputed evidence. Accordingly, the circuit court's denial of Gould's request to give the proffered instruction was not an abuse of discretion.

Affirmed.

HARRISON, C.J., and WOOD, J., agree.

12

*Benjamin W. Bristow*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.