SIMS *v.* STATE.

Opinion delivered September 27, 1926.

1.  HOMICIDE—SUFFICIENCY OF EVIDENCE.—In a prosecution for murder, evidence *held* to sustain a conviction for murder in the second degree.

2.  HOMICIDE—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—In a prosecution for murder, the error of excluding evidence of prior difficulties between deceased and defendant was cured by the subsequent admission of such testimony.

3.  HOMICIDE—EVIDENCE—GENERAL REPUTATION OF DEFENDANT.—In a prosecution for. murder involving self-defense, exclusion of evidence of defendant's reputation for truth and honesty was not error, as the proper inquiry was as to his reputation for peace and quiet.

4.  CRIMINAL LAW—INSTRUCTIONS.—Refusal of instructions that were either abstract or covered by others given was not error.

Appeal from Phillips Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Sheffield & Coates,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HUMPHREYS, J.   Appellant was indicted and tried in the circuit court of Phillips ·County for the crime of murder·in the first degree.   He was convicted of murder in the second degree and adjudged to serve a term of twelve years in the State Penitentiary as a punishment therefor; from which is this appeal.

The first and second assignments of error urged for a reversal of the judgment are that the verdict is contrary to the law and the evidence.   These assignments of error will be considered together.

The testimony introduced by the State was, in short, as follows: Appellant and deceased resided with their respective families near each other, either upon the same or adjoining plantations south of Helena, in Phillips County. They had known each other over eighteen months before the tragedy occurred. Julia Graham, the widow of the deceased, William Graham, testified that appellant and her husband had never had a fuss or squabble, to her knowledge, and that their relationship had been friendly until Thursday, April 6, 1926, before the tragedy, at which time deceased ordered appellant to leave their home because he had asked her to be his sweetheart. William Graham left home, unarmed, about 8 o'clock A. M. on the day of the killing, to plant corn for his father-in-law upon another place. Upon his return he met appellant in the public road near their respective homes. They talked awhile, and, during the time thus engaged, deceased pointed his finger at appellant. They then separated and walked in different directions for about fifteen feet, then turned and went toward each other again. Deceased had his hand up, and lowered it to his side, but did not move it backward toward his hip pocket. He had nothing in his hands. At this juncture appellant pulled his pistol and shot deceased twice, whereupon deceased ran a little piece across the field and fell. The shots were fired pretty close together. Immediately afterward appellant left the scene. An examination of the dead body disclosed that deceased was unarmed and in his shirtsleeves when shot. Also that both shots had entered the body, one passing through the heart, and that a gash had been inflicted upon his head, apparently by a lick with the pistol.

Jess Smith, one of appellant's witnesses, testified, on cross-examination, that he told him that he and the deceased had some words, and that, the very next time they got into it, he, appellant, was going to kill him.

Appellant testified in his own behalf to the effect that the deceased initiated four quarrels with him during their acquaintanceship, and had threatened to kill him

more than once, and on one occasion had drawn a Winchester on him. On cross-examination he admitted that deceased could have killed him at that time if he had wanted to, and that deceased had had opportunities after that to kill him but did not do it.

Several witnesses were introduced by appellant, who testified that the general reputation of the deceased was bad, and that he was a violent and turbulent man.

Appellant was the only witness who testified that deceased made a hip-pocket play at the time he shot him. The eye-witnesses for the State testified that deceased had nothing in his hand, had thrown his hand to his side but not toward his hip pocket, when appellant shot him. The verdict in the case indicates that the jury did not believe the testimony of the appellant to the effect that he shot deceased in necessary self-defense, but, on the contrary, believed the testimony of the State's witnesses to the effect that he killed deceased without justification.

An analysis of the testimony fails to disclose the elements necessary to reduce the homicide to manslaughter. The homicide was not the result of a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible. It follows that the admitted intentional homicide must have been murder in the first or second degree. Appellant was extremely fortunate in being convicted of murder in the second degree instead of the first degree, for, upon appeal, the evidence is sufficient to sustain a conviction for either. The verdict was not contrary to the evidence and law.

The third assignment of error urged for a reversal of the judgment is that the court erred in refusing to permit Frank Smith to testify to a difficulty over fruit, between appellant and deceased, in a certain peach orchard. Although this testimony was excluded when first offered, it was subsequently admitted, which cured the error, if any.

The fourth assignment of error urged for a reversal of the judgment is that the court erroneously refused to admit Robinson to testify as to a certain threat made by

deceased against appellant.. This piece of testimony was first excluded; but subsequently admitted, which cured the error, if any.

The fifth assignment of error urged for a reversal of the judgment is that the court erred in refusing to admit the testimony of witnesses Robinson and Pillow, who testified to the general reputation of appellant in the community where he lived, for truth and honesty. Appellant's truth and honesty were not an issue in the case. Inquiry should have been directed to appellant's reputation for peace and quiet. The testimony was properly excluded.

The other assignments of error urged for a reversal of the judgment consist in the refusal of the court to give his requested instructions numbers 4, 6, 7, 8, 9, 12, 15, 16, 19, 20 and 21. Instructions numbers 16 and 19 were properly refused on account of being abstract. We have carefully examined the other instructions and compared them with the instructions given, and find that they are virtually covered by the instructions which were given by the court.

No error appearing, the judgment is affirmed.