Robert Lee TAYLOR *v.* STATE of Arkansas

CA CR 88-247                                    771 S.W.2d 318

Court of Appeals of Arkansas
En Banc
Opinion delivered June 7, 1989.

G.B. *"Bing" Colvin III,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Denhammcclendon,* Asst. Att'y Gen., for appellee

JOHN E. JENNINGS, Judge. Robert Lee Taylor was charged in Chicot County Circuit Court with the first degree murder of Floyd Tumey, Sr. He was found guilty by a jury of the lesser included offense of negligent homicide and sentenced to one year in the county jail. The only argument on appeal is that the trial court erred in refusing to grant his motion for a directed verdict, based upon appellant's contention that self-defense was established as a matter of law. The court denied the motion and submitted the issue of self-defense to the jury. We find no error and affirm.

Barley Tumey of Lake Village, the deceased's brother, testified that the deceased lived in a trailer house on his mother's place. There were pecan trees located on nearby land owned by the government. The property had been previously owned by the deceased's family.

Barley Tumey testified that he was present when the shooting occurred. He saw his brother with a gun and testified that Floyd Tumey said, "I'm going to shoot me a couple of niggers." He said that his brother "could have been drinking some." He testified that he heard the shooting:

> Just guns went off. You know, I heard all the shots hit my truck. Then I just kept, we just kept laying there. And it was just like a few seconds, you know, my brother shot. Just a few more. There was a hesitation there. And one shot maybe from up at the top of the hill. And my brother said, "Huh-oh, he caught me with buckshot."

Barley Tumey took his brother to the hospital where he

subsequently died. He had been struck in the abdomen with buckshot.

Willie Jones testified that he and appellant were good friends. On the day of the shooting they had driven to the pumping station where the pecan trees were located. He testified that Floyd Tumey had driven by in a truck and told them they couldn't pick up his pecans. Later on, Tumey walked by and told them he was going home to get his shotgun. Jones testified that the appellant said that Tumey wasn't the only one that had a gun.

Jones testified that the appellant went to the car and got a shotgun out of the trunk. He also got three shells and stuck them in his pocket, and the two of them went back to picking pecans. Then he heard Barley Tumey drive up in a truck and Jones looked up and saw Floyd Tumey walking towards them along the road with a shotgun. He heard the deceased tell his brother that he "was going to kill two niggers." He testified that Tumey set his beer down on the highway and shot, after appellant had stepped out from behind a tree. He said the appellant was hit and then shot back. Then the deceased fired again and the appellant fired again. The appellant's second shot was apparently the fatal one. Jones testified that the first time they knew they were in trouble was when they saw the deceased with a gun, and that they didn't run because they didn't have anyplace to go. He said "there was a fence there, and just broad open space. We couldn't get across there without getting shot." He said that they "barely had any gasoline" in their car. He also testified that he thought Floyd Tumey was drunk.

Floyd White, a sergeant with the Chicot County Sheriff's Department, testified that there would have been approximately sixty-six yards between the appellant and the deceased when the shots were fired.

The appellant, Robert Lee Taylor, testified in his own behalf and his testimony was consistent with that of Willie Jones. He said that they were picking up pecans on government land and that when the deceased came up to them and told them to get out from under his pecan trees he said, "Old man, we ain't bothering you, you ought to chill out." When Floyd Tumey said, "I'll get my shotgun," appellant told him "Old man, you ain't the onliest one that's got a shotgun." He testified that he thought the deceased

was just bluffing. He said that he knew he was going to get shot at when he saw Floyd Tumey walk up the road with a gun, but that it was too late to leave. He testified that Tumey would have shot them in the back or in the car, that there was a briar thicket behind them, and that they had no place to go. Like Jones, appellant testified that Tumey shot first and that the first shot hit appellant. Taylor testified that he did not know that he had loaded his gun with buckshot.

The appellant made no objection to the giving of instructions on the lesser included offenses of manslaughter and negligent homicide and there is no contention on appeal that the jury was not correctly instructed on the law. Arkansas Code Annotated § 5-2-607 (1987) provides:

Use of deadly physical force in defense of a person.

(a) A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:

(1) Committing or about to commit a felony involving force or violence; or

(2) Using or about to use unlawful deadly physical force.

(b) A person may not use deadly physical force in self defense if he knows that he can avoid the necessity of using that force with complete safety:

(1) By retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor, or if he is a law enforcement officer or a person assisting at the direction of a law enforcement officer; or

(2) By surrendering possession of property to a person claiming a lawful right thereto.

██ Justification, by way of self-defense or otherwise, is a defense. Ark. Code Ann. § 5-2-602 (1987). Where there is evidence of self-defense it is error for the court not to give an appropriate instruction, *Doles* v. *State*, 275 Ark. 448, 631 S.W.2d 281 (1982), but the question is one of fact for the jury. We are cited to no case, and can find none, which holds that if the

150

evidence that the defendant acted in self-defense is strong, the court should take the case from the jury and decide the issue as a matter of law.

██ Although decided under prior law, *Ringer* v. *State*, 74 Ark. 262, 85 S.W. 410 (1905), is not obsolete. There the supreme court made it clear that the question of justification is largely a matter of the defendant's intent. A defendant's intention, being a subjective matter, is ordinarily not subject to proof by direct evidence, but must rather be established by circumstantial evidence. *See Lewis* v. *State*, 7 Ark. App. 38, 644 S.W.2d 303 (1982). It is essentially a question of fact to be decided by the trier of fact, in this case the jury. Furthermore, the jury in the case at bar was not required to believe the testimony of the appellant, nor for that matter, that of his friend Willie Jones. *See Gilliam* v. *State*, 294 Ark. 115, 741 S.W.2d 631 (1987).

Unquestionably appellant shot Floyd Tumey and caused his death. The appellant's intent and "reasonable belief" were questions of fact for the jury. It was also for the jury to decide whether the appellant knew that he could avoid the necessity of using deadly force by retreating or by surrendering possession of the property. Ark. Code Ann. § 5-2-607(b) (1987).

██ We hold that the trial court did not err in submitting the issue of self-defense to the jury.

Affirmed.

MAYFIELD, J., CORBIN, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree to the affirmance of the judgment of conviction for negligent homicide. At the conclusion of the state's testimony, the appellant moved for a directed verdict on the filed charge of first degree murder "or any lesser included offense," and at the conclusion of all the evidence in the case, the appellant again made the same motion. The evidence by the eyewitnesses to the shooting, including the deceased's own brother, established that the deceased told the appellant he was going to get his gun; that the deceased did get his gun and walked toward the appellant announcing, so all the witnesses including the appellant could hear, that he was going to shoot a couple of niggers; that he raised his gun and shot appellant; and that appellant also raised his gun and shot the

deceased.

Although the brother of the deceased did not say, as did the appellant and his friend, that the deceased shot first, the brother did not deny that the deceased shot first. Considered in the light most favorable to the state, the deceased's own brother testified that the first shots were fired simultaneously. However, I do not think it important to this appeal to know which man fired first. The law is clear. A person commits negligent homicide "if he negligently causes the death of another person." *See* Ark. Stat. Ann. § 41-1505 (Repl. 1977), as amended by Act 538 of 1987. (The appellant was charged with an act committed on November 11, 1987. Ark. Code Ann. (1987) did not go into effect until December 31, 1987. *See* section 2 of Act 267 of 1987.) The Commentary to Ark. Stat. Ann. § 41-1505 states that it "is designed to cover conduct producing liability because the actor negligently fails to perceive that his conduct creates a substantial and unjustifiable risk of death to another." This court has pointed out that one charged with negligent conduct as defined in Ark. Stat. Ann. § 41-203(4) (Repl. 1977) is assumed to have been unaware of the risk of his conduct. *Smith* v. *State*, 3 Ark. App. 224, 623 S.W.2d 862 (1981). It is obvious that when the appellant in this case shot at the deceased he was aware of the risk involved; neither the state nor the appellant contends that the appellant was unaware of the risk of his conduct. Under the evidence in this case, there is simply no way the appellant could be guilty of negligent homicide, and the court should have granted his motion for directed verdict as to the lesser included offense of negligent homicide.

Not only is the appellant not guilty of negligent homicide, I think his motions for directed verdict should have been granted because of his defense of justification. The evidence is clear that the appellant knew the deceased was approaching him with a gun while making threats to shoot him and that there was no place for appellant to go except across clear land—exposed to the deceased's stated objective of shooting appellant. It has always been the law in Arkansas that "one is not required to retreat unless he can do so with safety to himself." *See LaRue* v. *State*, 64 Ark. 144, 41 S.W. 53 (1897); *Bieard* v. *State*, 189 Ark. 217, 72 S.W.2d 530 (1934); *Sanders* v. *State*, 256 Ark. 605, 509 S.W.2d 295 (1974); *Martin* v. *State*, 290 Ark. 293, 718 S.W.2d 938 (1986).

But the state does not contend that the appellant should have attempted to retreat at the time the deceased appeared with his gun. What the state argues is that the appellant should have retreated when the deceased told the appellant *he was going* to get his gun. The state's brief says that instead of going to his car and getting his own gun the appellant "could have driven off and the incident with the victim would have been avoided."

The law as to justification in effect at the time of the incident in this case, Ark. Stat. Ann. § 41-507 (Repl. 1977), provided:

(1) A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:

(a) committing or about to commit a felony involving force or violence, or

(b) using or about to use deadly physical force.

(2) A person may not use deadly physical force in self defense if he knows that he can avoid the necessity of using that force with complete safety:

(a) by retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor, or if he is a law enforcement officer or a person assisting at the direction of a law enforcement officer; or

(b) by surrendering possession of property to a person claiming a lawful right thereto.

The Commentary to Ark. Stat. Ann. § 41-507 states that one who claims self defense must use all "reasonable means" to avoid the killing and "under most circumstances" this means retreat where it can be effected with safety. *See Martin* v. *State, supra*, (quoting the Commentary). Now it is true that when the deceased yelled at the appellant "don't pick up my pecans," the appellant could have got in his car and left the area (even the whole state, I assume). And it is also true that the law does not allow one to use deadly physical force upon another if it can be avoided by "surrendering possession of property to a person claiming a lawful right thereto." But the trouble with the state's argument is that it requires the appellant to get off the property *before* he could have *reasonably* known that he needed to retreat. Before

the deceased returned with his gun, the appellant could not *reasonably* know that the deceased would return with a gun to run appellant off land owned by the government. I submit that it was neither reasonable nor required that the appellant run away when the deceased yelled at him. To require retreat at that time is not really retreat—it is surrender.

Therefore, I dissent. The appellant simply could not, in my opinion, be guilty of negligent homicide under the evidence in this case. Moreover, I think it is clear that under the evidence in this case, the appellant's action was justified as a matter of law.

CORBIN, C.J., and COOPER, J., join in this dissent.