Cite as 2023 Ark. App. 192

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CR-22-364

| | | |
|---|---|---|
| RHATEZ FURLOW | | Opinion Delivered April 5, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAIGHEAD |
| V. | | COUNTY CIRCUIT COURT, |
| | | WESTERN DISTRICT |
| | | [NO. 16JCR-19-929] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE RANDY F. PHILHOURS, |
| | | JUDGE |
| | | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Rhatez Furlow appeals from the Craighead County Circuit Court conviction of two counts of second-degree murder, a Class Y felony; and two counts of commission of a felony with a firearm, a Class B felony, to which he was sentenced by a jury to 150 years' imprisonment. On appeal, he raises five arguments for reversal: (1) the circuit court abused its discretion by allowing irrelevant evidence referring to Furlow by his nickname, Gotti, three times; (2) the circuit court abused its discretion by allowing hearsay attributed to the victim, Kafena Russell; (3) the circuit court abused its discretion by refusing to give instructions on self-defense and extreme-emotional-disturbance manslaughter; (4) the circuit court allowed improper arguments by the prosecutor; and (5) the circuit court erred by

refusing to apply Furlow's 868 days of jail credit toward his sentence in this case. We find no error and affirm.

The appellant, Rhatez D. Furlow, shot and killed his girlfriend, Kafena Russell, and her brother, Johnny Ray Russell, in Kafena's apartment on the night of July 17, 2019. Kafena "put him out" of her apartment where he co-habitated with her up until July 17 upon the belief that Furlow was cheating on her after she had returned unexpectedly from a trip to Missouri and found him with another woman in their apartment.

On July 18, 2019, the victims were found by an unidentified woman believed to be Kafena's relative. A neighbor, Mike Smith, heard the woman scream and went to investigate and found the two bodies. Police interviewed Mike Smith, who advised them Kafena had told him that she had kicked Furlow out of the apartment and said it was "over" just hours prior to her murder that night. At trial, Smith testified he had also noticed Furlow on a hill near the apartment watching Kafena and him that afternoon while they were talking.

Officers sought and located Furlow at the police station in Marked Tree on July 18 where he was being held in relation to an unrelated stabbing that occurred earlier that day. When questioned by officers, Furlow admitted he had been at Kafena's home the previous night but denied killing the victims or knowing who might have killed them. He said he left the apartment about 11:30 p.m. He said he called the mother of his child, Wendy White, to pick him up near the murder scene. He stated he walked around for about an hour before she picked him up. When he got into the car, he appeared angry and disheveled and stated to her he had been "jumped." They went back to Wendy's home where later the stabbing

2

incident occurred that led to his detention at the Marked Tree police station when officers questioned him.

After his arrest, Furlow gave two additional statements to the officers and eventually confessed to the murders. In those statements, he advised officers that he had called Kafena that night, but she would not answer her phone, so he called Johnny Ray to get him to let Furlow into the apartment to get his clothes. He explained to officers that he and Kafena were living together and that she had locked him out of the apartment. Furlow also stated that Johnny Ray did not recognize his voice when he called because he had laryngitis and was hoarse so he had to identify himself as Gotti, his nickname, so he would let him into the apartment. When Furlow arrived at the apartment, he had a bag with him that had his pistol in it. He said he sold marijuana and needed it for protection, so he carried it with him all the time.

Furlow said that Kafena and Johnny Ray were nagging him as soon as he entered the apartment about cheating and the woman who was with him in the apartment. Furlow stated he had gone upstairs at one point because he wanted to change his shirt and that they followed him upstairs, nagging him, and he tried to slam the bedroom door in their faces. He later came downstairs after changing his shirt. When he came back downstairs, they continued to argue, and he admitted to officers that he had gotten "mad, mad, mad" at their continued verbal assault. During the argument, Furlow said Kafena was standing at the loveseat in the living room, and Johnny Ray was walking around in the kitchen apparently rolling a dollar bill to snort cocaine. Furlow stated he was standing by the television that was

next to the front door while the argument continued. According to his statement and the crime-scene photographs, the television was next to the front door where he said he was standing, and the victims were across the room further into the apartment. Crime-scene photos show that Kafena was found lying on the kitchen side of the loveseat near the kitchen table, and Johnny Ray was lying behind the kitchen table against the kitchen counter. A diagram of the apartment and the crime-scene photos introduced into evidence without objection showed that neither victim was close to the front door of the apartment. Near the bodies were two wooden sticks. A knife was found outside in the bushes but could not be tied to either Kafena or Johnny Ray. Furlow told officers that there was no physical contact between the parties, and no weapons were used or threatened to be used by the victims, only verbal arguments. Furlow told officers that after the victims were killed he left the apartment and went to an area near an abandoned building where he threw the gun and magazine away in an overgrown area. Officers never recovered the weapon, although a search was conducted. Furlow admitted that his pistol was a 9mm. The State introduced evidence that the bullets recovered from the bodies of the victims were 9mm. The medical examiner testified that each victim had been shot five times.

I. *Arkansas Rules of Evididence 404(b) and 403*

Furlow argues for his first point on appeal that the circuit court abused its discretion by allowing into evidence his statement to police that his nickname is "Gotti," in violation of Arkansas Rules of Evidence 404(b) and 403 (2021). Specifically, he argues that the name Gotti associated him with the prior bad acts of mafia boss John Gotti and that admission of

4

the nickname was more prejudicial than probative. Furlow argues that his character was brought into issue on the basis of his chosen nickname without any evidence that it was prejudicial. In effect, the bad acts of another person would be a reflection on his character and therefore prejudicial.

In his statements to officers, Furlow volunteered that his nickname is Gotti and told officers that he used his nickname "Gotti" when he called Johnny Ray so that Johnny Ray would recognize him and open the door and let him into the apartment.

The admission of evidence under Rules 404(b) and 403 is committed to the sound discretion of the circuit court, and the appellate court will not reverse absent a showing of manifest abuse of discretion. *E.g.*, *Atwood v. State*, 2020 Ark. 283, at 17. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* Arkansas Rule of Evidence 401 (2021) defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, "any circumstance that ties a defendant to the crime" is independently relevant and admissible as evidence. *Jackson v. State*, 359 Ark. 297, 305, 197 S.W.3d 468, 474 (2004). Furlow's phone call placed him at Kafena's apartment, which established him as a suspect; thus, it was

relevant and admissible even if his nickname was used in the call. The fact that he used his nickname in the call was instrumental in his being allowed into the apartment that night.

Here, the nickname "Gotti" was not offered as evidence of other crimes, wrongs, or acts committed by Furlow, nor was it offered to prove his character, regardless of Furlow's speculation that the nickname associated him with mafia boss John Gotti and gang activity decades ago. There was never any mention of John Gotti to the jury nor was there any evidence presented that Furlow was involved in gang activity. When Furlow told the detectives in the interview that his nickname is "Gotti," they did not make any comment or seem to make the connection to John Gotti. The court is not required to speculate as to how a jury would relate Furlow's nickname to a person who was a gangster many years ago in New York City. In compliance with the circuit court's ruling, the State made no negative argument, examination, or inferences about the nickname. Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice. The circuit court did not abuse its discretion by admitting Furlow's statement that contained the nickname "Gotti" over Furlow's Rule 404(b) objection.

The circuit court likewise did not abuse its discretion by overruling Furlow's Rule 403 objection. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. However, "any circumstance that ties a defendant to the crime" is independently relevant and admissible as evidence. *Jackson*, 359 Ark. at 305, 197 S.W.3d at 474. Furlow's recounting of his phone call to Johnny Ray in which he identified himself by his nickname "Gotti" was probative of how he came into

6

contact with the victims the night of the murder and, thus, was relevant and admissible evidence and not unfairly prejudicial. Furlow has failed to demonstrate that the circuit court acted improvidently, thoughtlessly, or without due consideration in its rulings on the issue.

Furlow has shown no prejudice. The court did not abuse its discretion by allowing the use of Furlow's nickname into evidence. The probative value of the use of his nickname substantially outweighed any danger of possible or unfair prejudice.

## II. *Hearsay Testimony*

Furlow's second argument is that the circuit court abused its discretion by allowing inadmissible hearsay testimony offered by Kafena's neighbor, Michael Smith, to be introduced into evidence. This court reviews evidentiary rulings on hearsay under an abuse-of-discretion standard and will not reverse absent a manifest abuse of that discretion and a showing of prejudice. *E.g.*, *Lacy v. State*, 2020 Ark. App. 224, at 3–4, 599 S.W.3d 661, 664. Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2021). Hearsay evidence is generally inadmissible under Arkansas Rule of Evidence 802 unless it falls within an exception to the hearsay rule. *E.g.*, *Keister v. State*, 2011 Ark. App. 71, at 2. Rule 803(3) provides that a statement is not hearsay if it is "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed." The Arkansas Supreme Court has held that evidence of the state of mind of the victim, prior to a murder,

7

is admissible. *Vasquez v. State*, 287 Ark. 468, 473-B, 702 S.W.2d 411, 411 (1986) (supplemental opinion on denial of rehearing). Moreover, when, as here, the declarant is unavailable to testify due to death, a statement is not hearsay if it is "a statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, marriage, ancestry, or other similar fact of personal or family history." Ark. R. Evid. 804(a)(4), (b)(i). Here, Smith testified that the day before Kafena was murdered, Kafena told him "it was over" between her and appellant and that she had "put him out" because he was cheating on her, thus ending her relationship with Furlow. This testimony was properly admitted under Rule 803(3) as evidence of Kafena's state of mind prior to her murder. Moreover, the statement also was admissible under Rule 804(b)(i) because it was a statement of Kafena's personal history with Furlow. Although the circuit court did not consider Rule 804(b)(i) in its ruling, Arkansas appellate courts will affirm a circuit court's ruling if it reached the right result, even for the wrong reason. *E.g.*, *Holly v. State*, 2017 Ark. 201, at 11, 520 S.W.3d 677, 684; *Gould v. State*, 2014 Ark. App. 543, at 6, 444 S.W.3d 408, 412.

III. *Jury Instructions*

Furlow next argues that the circuit court abused its discretion by not giving an instruction on the defense of justification or extreme-emotional-disturbance manslaughter. A party is entitled to a jury instruction when it is a correct statement of the law and when there is a rational basis in the evidence to support giving the instruction. Thus, an instruction should be rejected when there is no rational basis for giving it. *E.g.*, *Hatley v. State*, 2021 Ark.

8

App. 134, at 11, 619 S.W.3d 77, 83. A circuit court's decision whether to give an instruction will not be reversed unless the court abused its discretion. *E.g.*, *id*. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

Furlow's proffered justification instructions stated that deadly physical force was necessary to defend Furlow because he reasonably believed that the victims were committing or about to commit a felony with force or violence or were using or about to use unlawful deadly physical force. Critical to the inquiry of whether one is justified in using deadly physical force is the reasonableness of the accused's apprehension that he was in danger of death or of suffering great bodily harm. *E.g.*, *Brown v. State*, 2020 Ark. App. 198, at 5, 595 S.W.3d 456, 460; *see* Ark. Code Ann. §§ 5-2-606 and -607 (Supp. 2021). The defendant's belief must be objectively reasonable and not arrived at via fault or carelessness. *E.g.*, *id.* A justification instruction must be given if there is any evidence to support it. *Sharp v. State*, 90 Ark. App. 81, 204 S.W.3d 68 (2005). Here, there was no evidence to support a finding by the circuit court that Furlow had a reasonable, objective belief that the victims were about to commit a felony with force or violence or that they were about to use unlawful deadly physical force on him.

Furlow argues that when he shot the victims, "he found his exit blocked by agitated, weapon-wielding people." The statement that his exit was blocked by agitated, weapon-wielding people has no basis in the physical evidence, Furlow's statements, or witness testimony. Furlow denied there had been any physical contact or fight between him and the

9

victims. Furlow stated that the victims were only verbally arguing with him about his alleged infidelity. The mere presence of objects that might have been used as weapons but were not shown to be wielded, brandished, or used does not provide a basis to show there was any evidence to give a jury instruction on justification.

Furlow told Detective Brooks that when they were arguing, he was next to the television, Kafena was next to the loveseat, and Johnny Ray was next to the kitchen table. The diagram of the apartment and photos of the crime scene show that, according to Furlow's description of where he and the victims were standing, the victims were not blocking his exit; rather, he was between the victims and the front door of the apartment. It is well settled that where the evidence does not support an instruction, it should be refused. *Robinson v. State*, 11 Ark. App. 18, 665 S.W.2d 890 (1984). Even if an instruction contains a correct statement of the law, it does not mean it is an error for the circuit court to refuse to give it if there is no basis in the evidence for it. *Wilson v. State*, 9 Ark. App. 213, 657 S.W.2d 558 (1983). This court has uniformly held that where the evidence does not support an instruction, it should be refused. *See Sims v. State*, 171 Ark. 799, 286 S.W. 981 (1926). Furlow's three statements and sworn testimony showed that there was not any evidence to support the giving of the instruction. Based on these facts, there was no rational basis for giving the proffered instruction on justification, and the court did not abuse its discretion nor act improvidently, thoughtlessly, or without due consideration.

Furlow's proffered extreme-emotional-disturbance-manslaughter instructions stated that if a person commits the offense of murder but does so under the influence of extreme

emotional disturbance for which there is a reasonable excuse, that person has committed the offense of manslaughter rather than murder. The reasonableness of the excuse is determined from the viewpoint of a person in the actor's situation under the circumstances as the actor believed them to be. Ark. Code Ann. § 5-10-104(a)(1)(B) (Repl. 2013). A jury instruction on extreme-emotional-disturbance manslaughter requires evidence that the defendant killed the victim following provocation such as "physical fighting, a threat, or a brandished weapon." *Boyle v. State*, 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005) (quoting *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 881 (2000)); *e.g.*, *Bragg v. State*, 2021 Ark. App. 381, at 9. Being angered, irritated, or annoyed by the victim does not constitute evidence of an extreme emotional disturbance. Ark. Code Ann. § 5-10-104(a)(1)(A); *e.g.*, *Spann v. State*, 328 Ark. 509, 515, 944 S.W.2d 537, 540 (1997); *Frazier v. State*, 309 Ark. 228, 229, 828 S.W.2d 838, 839 (1992). Furlow's being angry at the victims is not a reasonable excuse to take a gun out of his bag and fire twelve shots at the victims, striking each five times.

There was no rational basis in the evidence to support instructing the jury on extreme-emotional-disturbance manslaughter. As noted in the preceding section on justification, there was no evidence of a physical fight, threats, or a weapon being brandished before Furlow committed the murders. Furlow argues that the instant facts are similar to the facts and holding in *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992). In *Rainey*, the Arkansas Supreme Court held that the circuit court abused its discretion by refusing to give an extreme-emotional-disturbance-manslaughter instruction because the jury had been presented with evidence that the victim threatened to kill Rainey with a pistol before he took

it from her and shot her. Unlike this case, there was provocation by the victim, who made threats to kill Rainey and brandished a weapon. The case was reversed and remanded because of a failure to give the proffered instruction on extreme-emotional-disturbance manslaughter.

Here, there was no provocation by the victims shown by the evidence in this case. The facts of this case are more similar to those in *Bragg*, cited by the circuit court in its ruling. *See Bragg*, 2021 Ark. App. 381, at 10. In *Bragg*, this court held that the circuit court did not abuse its discretion by refusing to give the requested extreme-emotional-disturbance-manslaughter instruction because the evidence showed that Bragg and the victim had an argument about infidelity before the murder with no evidence of physical fighting, a threat, or a brandished weapon. Moreover, Bragg "never claimed that the victim threatened him or had a weapon before he shot her." *Id.*; *see also Spann v. State*, 329 Ark. 509, 944 S.W.2d 537 (1997); *Johnson v. State*, 2016 Ark. 156, at 5, 489 S.W.3d 668, 671. Here, as in *Bragg*, the victims did not make threats, did not brandish a weapon, nor was there a physical fight. Like Bragg, Furlow did not make that claim in either of his three statements to officers or in his penalty-phase testimony. *See also Boyle*, 363 Ark. at 362, 214 S.W.3d at 253; *Douglas v. State*, 2019 Ark. 57, 567 S.W.3d 483. It is reasonable to believe that had such events occurred, he would have made them known to officers to justify his conduct.

Given the above facts and the law, the circuit court did not act improvidently, thoughtlessly, or without due consideration when it declined to give Furlow's proffered instruction on extreme-emotional-disturbence manslaughter because there was no rational

12

basis to support the instruction. There was simply no evidence presented that would support the submission of this instruction to the jury.

## IV. *Prosecutorial Misconduct*

Furlow's fourth argument on appeal is that the circuit court erred by allowing the prosecutor to improperly comment that defense counsel did not believe Furlow was not guilty. A circuit court has very broad discretion in supervising and controlling the arguments of counsel, and its ruling is not subject to reversal unless there is a manifest, gross abuse of that discretion or the matter complained of is a statement of the attorney's opinion made only to arouse the passion and prejudice of the jury. *E.g.*, *Armstrong v. State*, 366 Ark. 105, 119, 233 S.W.3d 627, 638 (2006). Appellate courts will not reverse the action of a circuit court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of manifest abuse of discretion. *E.g.*, *Tate v. State*, 367 Ark. 576, 582, 242 S.W.3d 254, 260 (2006).

The State is limited in its argument to the evidence in the record, logical inferences and deductions therefrom, and matters of which judicial notice can be taken. *E.g.*, *id.* Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *E.g.*, *Gill v. State*, 2010 Ark. App. 524, at 14, 376 S.W.3d 529, 537. The circuit court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *E.g.*, *id.* This court will not reverse a circuit court's rulings on the propriety of a closing argument absent a showing of prejudice. *E.g.*, *Keister*, 2011 Ark. App. 71, at 3.

During closing arguments in the guilt phase of the trial, defense counsel, commenting on the strength of the State's case, argued to the jury that "we've been here talking about an innocent man" after calling the prosecutor a "liar" and being "dishonest." During the State's rebuttal closing argument, the prosecutor stated, "[N]ot one time during defense counsel's closing argument did he ever say, 'I submit to you that the defendant is not guilty. He couldn't with a straight face'." Furlow objected without asking for an admonition or mistrial, stating it was "improper for the prosecutor to comment on what defense counsel believed." The court overruled the Furlow's objection, stating he had opened the door to the remark in his closing statement. The prosecutor was allowed to fight fire with fire. *See Delatorre v. State*, 2015 Ark. App 498, 471 S.W.3d 223. The appellant must demonstrate actual prejudice, and this court will not reverse absent a showing of that prejudice. *Caldwell v. State*, 295 Ark. 149, 747 S.W.2d 99 (1988).

Based on the overwhelming proof of guilt, it cannot be said that the circuit court abused its discretion in overruling Furlow's objection to the prosecutor's remark. Furlow does not show how the jury was prejudiced simply because of the prosecutor's isolated remark since he had admitted committing the double homicide. Furlow has not shown that the statement was so prejudicial that it tainted the jury in its deliberations. In fact, the jury rejected the prosecutor's argument that Furlow should be found guilty of first-degree murder and instead found him guilty of the lesser offense of second-degree murder.

## V. *Jail-Time Credit*

Furlow's final argument is that the circuit court erred by not granting him 868 days of jail credit for time he spent in custody awaiting trial. If a defendant is held in custody for conduct that results in a sentence to imprisonment, the court shall credit the time spent in custody against the sentence. Ark. Code Ann. § 5-4-404 (Repl. 2013). However, a defendant is not entitled to jail credit on a subsequent sentence for time spent in jail on a parole revocation, even if the parole revocation resulted from the crime for which he received the subsequent sentence. On August 6, 2012, Furlow was convicted of residential burglary and sentenced to fourteen years' imprisonment. The exhibits clearly show that a parole-revocation warrant had been issued for Furlow on May 10, 2019, approximately two months prior to the murders. *E.g.*, *Wilson v. State*, 56 Ark. App. 47, 52, 939 S.W.2d 313, 316 (1997). Nothing in the record supports Furlow's claim at trial that he was incarcerated in Craighead County pending his trial on these charges because he could not make bond. It is, of course, the appellant's duty to bring up a sufficient record to enable the appellate court to consider his claims. *E.g.*, *Bob Cole Bonding v. State*, 340 Ark. 641, 643, 13 S.W.3d 147, 148 (2000). Furlow does not provide any proof that he was in the custody of Craighead County and not in the custody of the Arkansas Department of Correction (ADC) while he awaited trial on this case. Furlow and his counsel had knowledge that the parole hold was in place and that his parole had been revoked. In a pretrial motion filed on May 20, 2021, Furlow asked the circuit court to exclude his statements to police that "he is on parole and has a violation."

Furlow did not show evidence he was incarcerated in Craighead County rather than the ADC. However, there is evidence to support the State's argument that Furlow was incarcerated in the ADC on a parole violation while awaiting trial. The State made it clear on the record that Furlow had to be transferred from the ADC for trial in Craighead County by court order, reflecting that he was being held in the ADC for a parole violation. The court records show that Furlow was transported from the ADC to Craighead County a minimum of seven times while awaiting trial. Furlow knew his parole had been revoked and that he was incarcerated in the ADC pending trial on these charges.

In light of the above facts, the circuit court correctly concluded that, while awaiting trial, Furlow was incarcerated for a parole violation and not simply in jail pending trial on the present charge and, thus, was ineligible for jail-time credit. The court did not err in denying Furlow's additional jail-time credit request.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.