Cite as 2025 Ark. App. 233

# ARKANSAS COURT OF APPEALS
## DIVISIONS II & III
### No. CR-24-249

| | |
|---|---|
| MARKEITH MITCHELL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 16, 2025<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CR-21-150]<br><br>HONORABLE SPENCER G. SINGLETON, JUDGE<br><br>REVERSED AND REMANDED |

**WENDY SCHOLTENS WOOD, Judge**

I. *Introduction*

In July 2023, Markeith Mitchell was tried before a Union County jury for shooting and killing Tony Cole outside a pool hall in Strong, Arkansas. Following the presentation of the evidence, Mitchell requested jury instructions on justification and extreme-emotional-disturbance (EED) manslaughter, both of which the circuit court rejected. The jury convicted Mitchell of first-degree murder with a firearm enhancement and of tampering with physical evidence and sentenced him to seventy-eight years' imprisonment. After the circuit court entered a sentencing order on August 4, 2023, Mitchell filed a timely motion for a new trial, arguing that the circuit court erred in failing to give the two jury instructions. The motion was deemed denied, and this appeal followed.

Mitchell argues that the circuit court erred in refusing to give his proffered jury instructions on justification and EED manslaughter. He also argues that the circuit court erred in denying his motion for new trial. Because there was some evidence presented at trial that supports the requested instructions, we reverse and remand.

## II. *Standard of Review*

Mitchell's appeal challenges the circuit court's denial of his proffered jury instructions on justification and EED manslaughter. A party is entitled to a jury instruction when it is a correct statement of the law and when there is a rational basis in the evidence to support giving the instruction. *Furlow v. State*, 2023 Ark. App. 192, at 8, 664 S.W.3d 457, 464. An instruction should be rejected when there is no rational basis for giving it. *Id.*, 664 S.W.3d at 464. We will not reverse a circuit court's refusal to submit an instruction absent an abuse of discretion. *Calkins v. State*, 2024 Ark. 23, at 8, 682 S.W.3d 681, 686. Abuse of discretion requires more than mere error, such as that the court acted "improvidently, thoughtlessly, or without due consideration." *Id.* at 8, 682 S.W.3d at 686–87. However, the law is clear that a party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Sharp v. State*, 90 Ark. App. 81, 91, 204 S.W.3d 68, 75 (2005). Therefore, the question presented in this case is whether there is any evidence to support the justification and EED-manslaughter instructions. This question turns on the trial testimony.

## III. *Trial Testimony*

2

Jalisa Williams, Cole's cousin, testified that on January 30, 2021, she and Cole had been driving around together before arriving at the pool hall that night. They were outside the pool hall talking, and she noticed that "he wasn't answering [her]" and was no longer outside with her. At that time, she heard a commotion in the pool hall and went inside. She saw Cole on one side of the pool table and Mitchell on the other, and they were "going back and forth." Williams said that Mitchell did not look angry, and no one was trying to calm him down. Williams and another man grabbed Cole and took him outside to their vehicle. She was trying to keep Cole outside, trying to get him to leave, and calling Cole's mother on the phone to come get him because "he wouldn't' listen to [her]." She stated that Cole ran behind the barbershop, which was next door to the pool hall.[1]



---

[1] The pool hall is on the left side of the photos; the barbershop is to its right.



It was dark outside, and there was only one exterior light for the parking area. When Mitchell walked outside, Williams saw Cole going up the steps to the pool hall, and that is when she heard gunshots. She did not hear any arguing or see a fight before she heard the gunshots, she did not hear Cole threaten to kill Mitchell, and she did not see Cole with a gun. But she said Cole was angry and hostile.

Michael Rivers testified that he was in the pool hall when Cole came in. Rivers said that Cole and Mitchell were talking—not arguing—and they were not loud. Rivers could not hear what was said over the music. He testified that Cole did not swing at Mitchell or pull out a weapon. Cole walked outside after a few minutes but did not appear mad. After about five minutes, Mitchell walked outside "like there wasn't anything going on." Rivers then heard gunshots and saw Mitchell standing on the porch.

Ramairio Fuller testified that he was inside the pool hall when Cole "busted through the door" carrying a nearly empty bottle of alcohol and that he appeared intoxicated. Cole verbally confronted Mitchell, saying, "I'm tired of you messing with my mother." Mitchell

responded that he did not know what Cole was talking about. Fuller testified that people stopped Cole from coming around the pool table toward Mitchell, but Cole continued talking and was hitting the pool table with the bottle. Cole was telling Mitchell, "F him, F his kids, his grandparents, his parents and he kept on going and he stated that I'm going to kill you." Cole did not act like he was pulling out a weapon or going to take a swing at Mitchell. Two people escorted Cole outside. After Cole left, Mitchell waited a little while before he went to the door and opened it, looked out, checked his surroundings, and then exited the building. Fuller heard gunshots "not real long after that" and looked outside and saw Mitchell holding a gun.

The medical examiner testified that Cole had seven or eight gunshot wounds. One shot went in the palm of Cole's hand and there was no stippling or soot, which indicated the gun was more than three feet away from his hand. The medical examiner also testified that marijuana was found in Cole's system and that his blood-alcohol content was beyond the legal limit for driving.

Daniel Evans, Mitchell's friend, was at the pool hall the night of the shooting. He described the hall as being twelve feet by twelve feet or twelve feet by sixteen feet and as having only one door.





Evans was shooting pool when Cole kicked open the pool-hall door. Evans said that Cole was angry, cursed at Mitchell, and said, "I told you to stop messing with my mama." In response, Mitchell "stepped back like what are you talking about." Cole continued yelling and said he was "fixing to kill" Mitchell. According to Evans, Cole went outside on his own. Evans followed Cole outside to urinate behind the barbershop. Evans said that Cole was walking "full speed" toward his vehicle, and Evans believed he was going to get a gun. Cole's

friend had him in a "bear hug" yelling "no, don't get that." Cole pushed his friend down and continued running to his vehicle and reached under the seat. Cole's friend grabbed him again, but Cole got loose and ran around to the back of the barbershop. Evans said to Cole, "Whoa, whoa" and "what's going on," and Cole responded: "I'm done talking. I'm fixing to kill him."

Evans testified that Cole ran past him and sneaked up to where Mitchell was standing on the porch and said to Mitchell, "[D]idn't I tell you I was fixing to kill you?" Evans said that Mitchell "[was] not going anywhere," explaining that Mitchell's back was against the pool-hall door and that he could not move to either side or straight ahead. Evans stated that Cole was waving his left hand in the air while he spoke, he had his right hand in his pants, and he was "pulling" and "was toting, like he was, you know, trying to get a weapon." According to Evans, Mitchell stumbled back toward the closed door behind him like he was scared and then fired a gun at Cole, who still had his hand in his pants. Evans confirmed on cross-examination that he did not see Cole with a weapon.

The State presented rebuttal testimony of Lieutenant Randall Gilbert of the Union County Sheriff's Office. Sheriff Gilbert testified that he took a statement from Evans six days after the shooting. In his statement, Evans said that when Cole ran up to Mitchell outside the pool hall, he yelled at Mitchell about leaving his mother alone. Mitchell denied doing anything to Cole's mother, but Cole kept yelling at him. Evans stated that Mitchell pulled out his gun, Cole said, "[Y]ou ain't going to do anything," and Mitchell shot Cole, who had his hand in his pants.

7

IV. *Justification Instruction*

At the time of the incident giving rise to this appeal, a person was justified in using deadly force if he reasonably believed that another person was committing or about to commit a felony involving physical force or violence or using or about to use unlawful deadly force. Ark. Code Ann. § 5-2-607(a)(1)–(2) (Repl. 2013). A person could not use deadly force, however, if the person knew that he could avoid the necessity by retreating with complete safety. Ark. Code Ann. § 5-2-607(b). A "reasonable belief" is the belief that "an ordinary and prudent person would form under the circumstances in question." Ark. Code Ann. § 5-1-102(18) (Repl. 2024).

The question of justification is largely a matter of the defendant's intent. *Taylor v. State*, 28 Ark. App. 146, 150, 771 S.W.2d 318, 320 (1989). A defendant's intention, being a subjective matter, is ordinarily not subject to proof by direct evidence but rather must be established by circumstantial evidence. *Id.*, 771 S.W.2d at 320. It is essentially a question of fact to be decided by the trier of fact. *Id.*, 771 S.W.2d at 320; *see also Green*, 2011 Ark. App. 700, at 3 (stating that "[w]hether one is justified is largely a matter of the defendant's intent and is generally a fact question"). The defendant's belief must be objectively reasonable and not arrived at via fault or carelessness. *Furlow*, 2023 Ark. App. 192, at 9, 664 S.W.3d at 464. A justification instruction must be given if there is any evidence to support it. *Id.*, 664 S.W.3d at 464.

In denying Mitchell's request for the justification instruction, the circuit court stated that "[Mitchell] only presented the testimony of another witness that did not have any

evidence of what [Mitchell] believed. And accordingly, there is no evidence to support the introduction of this instruction."

On appeal, Mitchell argues that he shot his gun at Cole only after Cole, who was the aggressor inside and outside the pool hall, threatened to kill him, stepped toward him, and appeared to reach for a gun, causing Mitchell to be scared and stumble backward. Mitchell contends that Cole's threats and actions gave Mitchell the "reasonable belief" that Cole was about to commit a felony involving force or violence. Mitchell argues that he had nowhere to go. Finally, Mitchell argues that contrary to the circuit court's statement, his own testimony was not required for the justification instruction to be given.

The State acknowledges Mitchell's argument that the circuit court improperly denied the justification instruction because of the lack of testimony directly establishing what Mitchell believed. Nonetheless, the State argues that "[even] if the [circuit] court did refuse the instruction for the wrong reason, this Court can still affirm if it reached the right result," contending that there was no rational basis in the evidence for giving the self-defense instruction. Specifically, the State argues that after the initial confrontation inside the pool hall had concluded, Mitchell armed himself with a gun, followed Cole outside, and shot him even though Cole never brandished a weapon or physically assaulted Mitchell. The State also argues that Mitchell could have avoided the second encounter outside if he had stayed inside instead of following Cole outside.

The State cites *Douglas v. State*, 2018 Ark. 89, 540 S.W.3d 685, which holds that the justification defense is not applicable when one arms himself and goes to a place in

anticipation that another will attack him. However, in *Douglas*, it was undisputed that the initial confrontation between the defendant and the victim at the defendant's home had fully concluded, and the victim left and returned to his own home. *Id.* at 7, 540 S.W.3d at 689. The defendant then armed himself and went to the victim's home where he killed him. *Id.*, 540 S.W.3d at 689. These facts are distinguishable from the facts in the instant case. Mitchell walked outside the pool hall five or six minutes after Cole left. It is unclear from the testimony whether Mitchell went outside to look for Cole or whether he went outside to go home, believing that Cole had left the premises. There was, however, testimony that Cole ran up to Mitchell as soon as he stepped outside.

We hold that the circuit court abused its discretion in denying the justification instruction on the basis of its finding that there was not "any evidence of what the defendant believed." A defendant's testimony is not required to raise the issue of justification. In fact, this court has found that the justification instruction was appropriate even when the defendant testified that he did not commit the crime. *Gray v. State*, 2019 Ark. App. 543, at 6–7, 590 S.W.3d 177, 180. Additionally, justification becomes a defense when any evidence is offered tending to support its existence, and this evidence may be introduced by either the prosecution or the defense. *Peals v. State*, 266 Ark. 410, 418, 584 S.W.2d 1, 5 (1979).

It is also important to note that our role on appeal is not to weigh the evidence but to determine whether there is any evidence to support a jury instruction. In *Humphrey v. State*, 332 Ark. 398, 410, 966 S.W.2d 213, 219 (1998), our supreme court reversed and remanded the circuit court's refusal to give the justification instruction where the defendant

10

did not see the victim with a gun but thought the victim was reaching for a gun. The

*Humphrey* court set forth our role in reviewing this type of case:

> Our role is not to weigh the evidence to determine if the justification instruction should have been given. Instead, the standard requires that we limit our consideration to whether there is any evidence tending to support the existence of a defense. If there is such evidence, then the justification instruction must be submitted to the jury so that it can make the factual determination as to whether the charged conduct was committed in self-defense.

*Id.*, 966 S.W.2d at 219.

In the case at bar, there is some evidence that Mitchell reasonably believed Cole was about to commit a felony involving force or violence upon Mitchell when he shot Cole. There is testimony that Cole kicked open the door to the one-room, one-door pool hall, approached Mitchell with a liquor bottle, hit the pool table with the bottle, cursed at Mitchell, told him to stop "messing with his mom," and threatened to kill Mitchell. Cole was yelling and angry and had to be removed from the pool hall. There was testimony that, once outside, his cousin and another individual tried to calm Cole down without success and that he went to his vehicle to retrieve a gun. Approximately five or six minutes after Cole was removed from the pool hall, Mitchell checked his surroundings and exited the building. As Mitchell stood on the front porch of the pool hall with his back to the door, Cole ran to the front of the pool hall from the back of the adjacent barbershop, sneaked up to the front porch, stepped up the steps toward Mitchell, threatened to kill Mitchell again, reached into his pants, and "pulled" as if he had a gun. There was testimony that Mitchell had nowhere to go, looked scared, stumbled backward, and shot Cole. There was evidence that Cole was

11

the initial aggressor in both encounters with Mitchell that occurred within five to six minutes of each other. Finally, there was evidence that Cole seemed intoxicated and had marijuana in his system along with a blood-alcohol content higher than the legal limit for driving in Arkansas.

The State and the dissenting judges present an alternative interpretation of the evidence that asks us to weigh the testimony emphasizing that Cole was not seen with a weapon and Mitchell's purported opportunity to remain in the one-room pool hall. However, this view of the evidence does not exclude other rational interpretations, and weighing the evidence is not a role this court can indulge on appeal. Rather, that determination is for the jury.

Because there is some evidence to support it, the justification instruction should have been submitted to the jury so that it could make the factual determination whether the charged conduct was committed in self-defense. Accordingly, we hold that the circuit court abused its discretion when it refused Mitchell's proffered justification instruction, and we reverse and remand on this point.

V. *EED Manslaughter Instruction*

Mitchell also argues that the circuit court erred in refusing his proffered jury instruction on EED manslaughter. A person commits EED manslaughter if "[t]he person causes the death of another person under circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse." Ark. Code Ann. § 5-10-104(a)(1)(A) (Repl. 2024). A jury

12

instruction on EED manslaughter requires evidence that the defendant killed the victim following provocation such as "physical fighting, a threat, or a brandished weapon." *Boyle v. State*, 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005). However, "mere threats or menaces, where the person killed was unarmed and neither committing nor attempting to commit violence on the defendant at the time of the killing, will not free him of the guilt of murder." *Pollard v. State*, 2009 Ark. 434, at 5, 336 S.W.3d 866, 868 (citing *Rainey v. State*, 310 Ark. 419, 423, 837 S.W.2d 453, 455 (1992)). Adequate provocation can occur when the victim is armed or is attempting to commit violence toward the defendant. *Id.*, 336 S.W.3d at 868. A person is not entitled to an instruction on EED manslaughter, however, when he "invited the provocation that ensued between him and" the victim. *See, e.g.*, *Douglas*, 2019 Ark. 57, at 13, 567 S.W.3d at 493.

We review the refusal to instruct on EED manslaughter for an abuse of discretion, but "[w]hen there is the *slightest* evidence to warrant an instruction on a lesser included offense, it is error to refuse to give it." *Rainey v. State*, 310 Ark. 419, 422, 837 S.W.2d 453, 455(1992); *see also Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000). An instruction should be rejected when there is no rational basis for giving it. *Furlow*, 2023 Ark. App. 192, at 10, 664 S.W.3d at 465.

Mitchell argues that the circuit court abused its discretion in refusing the EED manslaughter instruction because there is some evidence on this record that he was "acting under extreme emotional disturbance." He recites the same evidence on which he relied to

13

support his argument that the court abused its discretion in denying his justification instruction.

In response, the State contends that there is no rational basis on which to give the EED manslaughter instruction because there was no evidence in the record that Cole brandished a weapon or that he violently assaulted Mitchell. It argues that Cole was unarmed and that even Evans testified that Cole did not "present" a weapon before Cole was shot.

The State cites *Pollard* for support. In *Pollard*, a witness testified that the victim wrapped his shirt around his hand and told Pollard to put the gun down and "fight [him] like a man." 2009 Ark. 434, at 2, 336 S.W.3d at 867. Another witness testified that the two men were arguing just before the victim raised his hands and Pollard shot him. *Id.*, 336 S.W.3d at 867. No witness testified that the victim was armed with a gun. *Id.*, 336 S.W.3d at 867. Pollard testified that, earlier in the night, the victim had called him a snitch, showed him the butt of a pistol in his waistband, and threatened to "blow yo' ass off." *Id.* at 7, 336 S.W.3d at 869. Pollard also testified that when the victim approached him later that same night while cursing at him with his fist wrapped in something, Pollard was scared and believed the victim had a gun and intended to kill him. *Id.* at 7, 336 S.W.3d at 869–70.

The supreme court stated that the only evidence in support of the EED-manslaughter instruction was the defendant's self-serving testimony, and it was contradicted by several eyewitnesses. *Id.* at 9, 336 S.W.3d at 870. The court further held that even if it accepted Pollard's self-serving testimony as potential evidence to support a manslaughter instruction,

the victim's "threats" as testified did not provide a rational basis for the instruction. *Id.* at 10, 336 S.W.3d at 871.

*Pollard* is distinguishable because Mitchell, unlike the defendant in *Pollard*, is not relying on his own testimony in support of the EED manslaughter instruction. He relies on the testimony from State and defense witnesses who were present at the time of the shooting. Second, unlike the facts in *Pollard*, the testimony of the witnesses in Mitchell's case constitutes some evidence that he caused Cole's death under the influence of extreme emotional disturbance for which there was a reasonable excuse. This evidence demonstrated that Cole was the initial aggressor both inside and outside the pool hall; he provoked Mitchell inside and outside the pool hall; he was angry, yelling, and cursing at Mitchell; he hit a liquor bottle against the pool table; he had to be physically removed from the pool hall; he threatened to kill Mitchell more than once; and he "ran up on" Mitchell as Mitchell stepped out of the pool hall and was moving up the steps toward Mitchell with his hand in his pants, pulling as if he had a weapon. On this evidence, a jury could rationally determine that Mitchell was acting under the influence of extreme emotional distress for which there was a reasonable excuse. Again, it is not our role to weigh the evidence but to ascertain whether there was any evidence to support the requested instruction. Therefore, we hold that the circuit court abused its discretion when it refused Mitchell's request to give the jury the EED-manslaughter instruction. Accordingly, we reverse and remand on this point.

VI. *Motion for New Trial*

15

Because we reverse and remand the circuit court's denial of the proffered jury instructions on justification and EED manslaughter, Mitchell's third point on appeal—his challenge to the deemed denial of his motion for new trial for refusing to give the jury the two instructions—is moot.

Reversed and remanded.

HARRISON, TUCKER, and THYER, JJ., agree.

KLAPPENBACH, C.J., and BARRETT, J., dissent.

**N. MARK KLAPPENBACH, Chief Judge, dissenting**. I would affirm Mitchell's murder conviction because the circuit court correctly denied his requests for the two jury instructions at issue.

Critical to the inquiry of whether one is justified in using deadly physical force is the reasonableness of the accused's apprehension that he was in danger of death or of suffering great bodily harm. *Furlow v. State*, 2023 Ark. App. 192, 664 S.W.3d 457. Although Cole had been aggressive toward Mitchell, there was no evidence of any physical contact or fighting and no evidence that Cole brandished a weapon. *See Furlow*, *supra* (holding that there was no basis for a justification instruction where only verbal arguing had occurred without any physical contact, fighting, or brandishing of weapons). While Evans testified that he saw Cole reach under his vehicle's seat and Evans believed that Cole was retrieving a gun, this occurred before Mitchell came outside. Accordingly, even if Cole appeared to retrieve a gun, Mitchell did not see this. Moreover, Evans's account had changed from the statement he gave law enforcement the week of Cole's killing. Evans reported then that

Mitchell pulled out his gun in response to Cole yelling at him and that Mitchell did not shoot Cole until Cole told him he "ain't going to do anything." What remained consistent in both Evans's account to law enforcement the week of the killing and his testimony at trial is that he never saw Cole with a weapon, and Cole never took his hand out of his pants before he was shot. I do not believe this evidence could support a finding that Mitchell reasonably believed Cole was about to commit a felony involving force or violence or about to use unlawful deadly force.

Furthermore, when this offense occurred, the law provided that a person may not use deadly physical force in self-defense if he knows he can avoid the necessity of using that force with complete safety by retreating. *See* Ark. Code Ann. § 5-2-607(b)(1) (Repl. 2013). One who claims self-defense must show not only that the person killed was the aggressor, but also that the accused used all reasonable means within his power and consistent with his safety to avoid the killing. *Douglas v. State*, 2018 Ark. 89, 540 S.W.3d 685. Here, there is nothing to show that Mitchell could not have opened the door and re-entered the pool hall when approached by Cole outside.

I would also hold that the denial of the extreme-emotional-disturbance manslaughter instruction was appropriate because, as recognized by the majority, "mere threats or menaces, where the person killed was unarmed and neither committing nor attempting to commit violence on the defendant at the time of the killing, will not free him of the guilt of murder." *Pollard v. State*, 2009 Ark. 434, at 5, 336 S.W.3d 866, 868. In *Pollard*, the defendant testified that he believed the victim had a gun when the victim requested they fight because earlier in

the night, the victim showed him the butt of a pistol in his waistband and threatened him. The supreme court held that these alleged threats did not provide a rational basis for the instruction where the victim was unarmed and neither committing nor attempting to commit violence on Pollard at the time of the killing; there was no evidence that Pollard actually saw the victim with a weapon in his hand at the time of the killing. Here, as in *Pollard*, there was no testimony that anyone actually saw Cole with a weapon in his hand at the time of the killing. While Evans testified that Cole threatened Mitchell outside before the shooting, he did not testify that Cole brandished a weapon or attempted to commit violence on Mitchell.

I cannot say that the circuit court abused its discretion in denying the two instructions. Accordingly, I dissent.

Barrett, J., joins.

*The Firm, PLLC*, by: *S.L. Smith*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.